**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DISH NETWORK L.L.C., | |
| Plaintiff, | |
| v. | Case No. 20-cv-00570 |
| COX MEDIA GROUP, LLC, APOLLO GLOBAL MANAGEMENT, LLC, APOLLO INVESTMENT FUND IX, L.P., TERRIER MEDIA BUYER, INC., NBI HOLDINGS, LLC, BRYSON BROADCAST HOLDINGS, LLC, NORTHWEST BROADCASTING, L.P., NORTHWEST BROADCASTING, INC., CAMELOT MEDIA BUYER, INC., AND CAMELOT MEDIA HOLDINGS, LLC, | Hon. Thomas M. Durkin |
| Defendants. | |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S MOTION TO REMAND**

Scott Lassar (No. 1586270)
Bruce R. Braun (No. 6206628)
Hille R. Sheppard (No. 6226077)
John M. Skakun III (No. 6297636)
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036
slassar@sidley.com
bbraun@sidley.com
hsheppard@sidley.com
jskakun@sidley.com

*Counsel for Defendants
(other than Cox Media Group, LLC)*

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND................................................................ 2

     A.   AIF IX Has Neither Direct Nor Indirect Ownership Of Any Parties To The
          Transactions At Issue, Nor The Authority To Direct Or Control Them.......................... 2

     B.   The Transactions And Contracts At The Center Of This Lawsuit.................................. 4

     C.   Procedural History. ................................................................................................... 6

ARGUMENT ....................................................................................................................... 8

I.    AIF IX Is Fraudulently Joined Because It Is Not Alleged To Have Taken Any Action
     Relevant To This Litigation, And Is Incapable Of Having Done So.................................... 9

     A.   DISH Fails To Allege Any Specific Action Taken By AIF IX. .................................... 10

     B.   DISH Improperly Relies On Collective Pleading In An Attempt To State A Cause
          Of Action. .............................................................................................................. 12

     C.   There Is No Reasonable Possibility That The Complaint States A Cause
          Of Action Against AIF IX. ...................................................................................... 14

II.   Defendants Are Not Required To Establish Their Citizenship Through
     Summary Judgment Evidence, But In Any Event They Have Done So.............................. 17

III.  Defendants Did Not Waive Their Removal Right By Opposing The TRO. ....................... 18

CONCLUSION................................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**                                             **Page(s)**

*Bank of Am., N.A. v. Knight*,
  725 F.3d 815 (7th Cir. 2013) ................................................................13

*Becker v. Country Mut. Ins. Co.*,
  2011 WL 221773 (S.D. Ill. Jan. 24, 2011)..............................................16

*Belleville v. Cottrell, Inc.*,
  2010 WL 1251442 (S.D. Ill. Mar. 24, 2010) ...........................................17

*Bevelheimer v. Gierach*,
  339 N.E.2d 299 (Ill. App. Ct. 1975) .......................................................14

*Blair v. City of Chi.*,
  1988 WL 6918 (N.D. Ill. Jan. 26, 1988) ..................................................18

*Bodine's, Inc. v. Fed. Ins. Co.*,
  601 F. Supp. 47 (N.D. Ill. 1984) .............................................................12

*Bostik, Inc. v. CAN Fin. Corp.*,
  2008 WL 11456203 (E.D. Wis. Sept. 18, 2008).......................................12

*Bytemark, Inc. v. Xerox Corp.*,
  342 F. Supp. 3d 496 (S.D.N.Y. 2018).......................................................16

*Cahill v. Ivex Novacel, Inc.*,
  2004 WL 2064305 (N.D. Ill. Sept. 1, 2004) ............................................18

*Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*,
  752 A.2d 1175 (Del. Ch. 1999)................................................................14

*Chamberlain Grp., Inc. v. Techtronic Indus. N. Am., Inc.*,
  2017 WL 4269005 (N.D. Ill. Sept. 26, 2017) ..........................................13

*City of Chicago v. Beretta U.S.A. Corp.*,
  821 N.E.2d 1099 (Ill. 2004)....................................................................14

*CSX Transp., Inc. v. Chi. & N. W. Transp. Co., Inc.*,
  62 F.3d 185 (7th Cir. 1995) ....................................................................14

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
  574 U.S. 81 (2014)..................................................................................17

*Detrick v. Home Depot, U.S.A., Inc.*,
  2013 WL 3836257 (N.D. Ill. July 23, 2013)...............................................8

*E. Hampton Union Free Dist. v. Sandpebble Builders, Inc.*,
   884 N.Y.S.2d 94 (N.Y. App. 2009) ...................................................14

*Fate v. Buckeye State Mutual Ins. Co.*,
   174 F. Supp. 2d 876 (N.D. Ind. 2001) ...........................................18, 19

*Franklin First Fin., Ltd. v. Contour Mortg. Corp.*,
   113 N.Y.S.3d 489 (N.Y. Sup. Ct. 2019) .........................................17

*Handlon v. Allis-Chalmers Coal Gas Corp.*,
   666 F. Supp. 153 (S.D. Ill. 1987) ...................................................19

*Jacobs v. Paynter*,
   727 F. Supp. 1212 (N.D. Ill. 1989) .................................................14

*Johnke v. Espinal-Quiroz*,
   2017 WL 3620745 (N.D. Ill. Aug. 23, 2017) .................................14

*Kiddie Rides USA, Inc. v. Elektro-Mobiltechnik GMBH*,
   579 F. Supp. 1476 (C.D. Ill. 1984) ...............................................19

*Martin v. Franklin Capital Corp.*,
   546 U.S. 132 (2005) ........................................................................20

*Poulos v. Naas Foods, Inc.*,
   959 F.2d 69 (7th Cir. 1992) .................................................1, 9, 15

*Radaszewski v. Garner*,
   2002 WL 31430325 (N.D. Ill. Oct. 21, 2002)................................18

*RCA Trademark Mgmt. S.A.S. v. VOXX Int'l Corp.*,
   2015 WL 5008762 (S.D.N.Y. Aug. 24, 2015)...............................16

*Rehabcare Grp. E., Inc. v. CC Care, LLC*,
   2016 WL 2595108 (N.D. Ill. May 4, 2016) ...................................14

*Rothner v. City of Chicago*,
   879 F.2d 1402 (7th Cir. 1989) .......................................................18

*Ruder & Finn Inc. v. Seaboard Sur. Co.*,
   422 N.E.2d 518 (N.Y. 1981)..........................................................17

*S. Side Bank v. T.S.B. Corp.*,
   419 N.E.2d 477 (Ill. App. Ct. 1981) .............................................14

*ScentSational Techs., LLC v. PepsiCo., Inc.*,
   2017 WL 4403308 (S.D.N.Y. Oct. 2, 2017)..................................16

*Schur v. L.A. Weight Loss Ctrs., Inc.*,
    577 F.3d 752 (7th Cir. 2009) ........................................................................9

*Schwartz v. State Farm Mut. Auto. Ins. Co.*,
    174 F.3d 875 (7th Cir. 1999) ........................................................................9

*Signicast, LLC v. Fireman's Fund Ins. Co.*,
    920 F. Supp. 2d 967 (E.D. Wis. 2013)........................................................17

*Starchvill v. Dart*,
    2018 WL 3456525 (N.D. Ill. July 18, 2018).............................................20

*TIG Ins. Co. v. Reliable Research Co.*,
    334 F.3d 630 (7th Cir. 2003) ......................................................................17

*United Computer Sys., Inc. v. AT&T Corp.*,
    298 F.3d 756 (9th Cir. 2002) ......................................................................16

*Veugeler v. Gen. Motors Corp.*,
    1997 WL 160749 (N.D. Ill. Apr. 2, 1997) ..................................................9

**Federal and State Statutes**

28 U.S.C. § 1332..................................................................................................9

28 U.S.C. § 1441..................................................................................................9

28 U.S.C. § 1446(b)(2)(A)....................................................................................8

735 ILCS 5/2–701(a) ..........................................................................................16

**Other Authorities**

Federal Rule of Civil Procedure 8(a) ................................................................17

14C Wright & Miller, Fed. Prac. & Proc. § 3731 (Rev. 4th ed. 2019)...........18

## INTRODUCTION

This is a contract dispute. The contract at issue expressly requires that any suit relating to it must be filed in federal court, and can be filed in state court *only* if the federal court lacks subject matter jurisdiction. (Ex. A, Cox Retransmission Agreement § 18(a) ("All disputes relating to the foregoing will be litigated solely and exclusively in the United States District Court for the Northern District of Illinois" unless the court lacks "subject matter jurisdiction").) Every entity Plaintiff DISH Network L.L.C. ("DISH") could legitimately name as a defendant in this case is of diverse citizenship from DISH. (Ex. B, 3/4/19 FCC Application[1] 11, 30–37; Ex. C, Sobel Decl. ¶ 15; Ex. D, Fennell Decl. ¶¶ 3–9.) So the case belonged in federal court. But because DISH preferred state court, it tacked Apollo Investment Fund IX, L.P. ("AIF IX") to the caption and then alleged *nothing* about any action or decision by that entity in the complaint.

Plaintiff's failure to plead that AIF IX took any action or made any decision that could give rise to liability, by itself, warrants denial of the motion to remand. *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 74 (7th Cir. 1992) ("only . . . present allegations count" when evaluating a remand motion). But there is more. As explained in the declaration of Aaron Sobel (Ex. C), AIF IX in fact has not, and could not have, taken any action or made any decision that could conceivably give rise to liability. It has no ownership interest in any of the entities involved in the series of transactions about which DISH complains. It has no power to direct or control those entities, and had no power to direct or control how the transactions were structured or executed. It was not a party to any of the contracts at issue here, and it never signed or negotiated a contract with DISH. This is because AIF IX is a passive investment vehicle – a conduit through

---

[1] Defendants have added internal pagination to the FCC Application (Ex. B) for ease of review. The FCC Application includes both purchase agreements discussed below.

which funds pass. Moreover, no funds concerning the transactions in this case passed through AIF IX, and it did not invest in the entities at issue here. DISH fraudulently joined AIF IX to defeat diversity and avoid the mandatory forum-selection clause that DISH agreed to.

DISH obtained an *ex parte* temporary restraining order ("TRO") in state court after providing what it calls "notice" to Defendants.[2] (Mem. 5 (Dkt. 25).) This notice was actually an email sent *two minutes after the TRO hearing started.* Defendants accepted the state court's invitation to file papers and appear on a highly expedited basis to oppose DISH's TRO. (*See* Ex. E, 1/15/20 Hr'g Tr. 23, 26.) Under controlling Seventh Circuit authority, such limited conduct before the state court does not waive Defendants' right to remove. This Court has jurisdiction to resolve this dispute, as the contract requires.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. AIF IX Has Neither Direct Nor Indirect Ownership Of Any Parties To The Transactions At Issue, Nor The Authority To Direct Or Control Them.

AIF IX is a passive investment vehicle. (Ex. C, Sobel Decl. ¶ 3.) It has no employees. (*Id.*) It is operated and controlled by its general partner, Apollo Advisors IX, L.P., which is not a defendant in this case. (*Id.*) Apollo Advisors IX, L.P. is an affiliate of a defendant in this case, Apollo Global Management, Inc. ("AGM").[3] (*Id.*) The general partner does not make the investment decisions for AIF IX. (*Id.*) Rather, the general partner, acting on behalf of AIF IX, has contracted with a distinct entity, Apollo Management IX, L.P., to make those decisions. (*Id.*)

---

[2] "Defendants" refers to Terrier Media Buyer, Inc. d/b/a Cox Media Group, NBI Holdings, LLC, Bryson Broadcast Holdings, LLC, Northwest Broadcasting, L.P., Northwest Broadcasting, Inc., Camelot Media Buyer, Inc., Camelot Media Holdings, LLC, Apollo Global Management, Inc., and Apollo Investment Fund IX, L.P. Cox Media Group, LLC also is named as a defendant in DISH's complaint. Undersigned counsel do not represent Cox Media Group, LLC.

[3] DISH should not be confused that Apollo Global Management, LLC is now Apollo Global Management, Inc. (*See* Mem. 14 n.4.) On September 5, 2019, Apollo Global Management, LLC completed its statutory conversion to a corporation. (Ex. C, Sobel Decl. ¶ 15.) DISH rightly refers to Apollo Global Management, Inc. in the body of its complaint. (*E.g.*, Compl., preamble, ¶ 10.)

AIF IX, which is the only entity named in this case that could defeat this Court's diversity jurisdiction, does not decide where to invest the funds provided by its limited partners, and has no authority or capacity to control the decisions of any of the entities in which funds are invested by its investment manager. (*Id.* ¶¶ 4–5.)

DISH asserts that AIF IX "sits atop the organizational structure" of Terrier Media Buyer, Inc. ("Terrier Media"). (Mem. 9.) In fact, AIF IX has no ownership interest in Terrier Media. (Ex. C, Sobel Decl. ¶¶ 7, 9.) DISH also claims that AIF IX is represented on the chart attached as Appendix A to its memorandum. (Mem. 9–10, 13.) Again, DISH is wrong. AIF IX is not reflected on that chart at all. (Ex. C, Sobel Decl. ¶ 7 & Ex. A thereto.) Each of the entities depicted at the top of that chart – AP IX Titan Holdings, L.P., AP IX Titan Holdings GP, LLC, AIF IX (PMC Equity AIV), L.P., and AP IX (PMC) VoteCo, LLC – is a legal entity separate and distinct from Apollo Investment Fund IX, L.P., *i.e.*, AIF IX. (*Id.* ¶ 8.) AIF IX has no direct or indirect ownership interest in any of those distinct legal entities; it is neither a parent nor a subsidiary of any of those entities. (*Id.*) Those entities were not named as defendants in this case.

AIF IX has no ability to direct or control any decisions Terrier Media, or any other defendant, makes. (*Id.* ¶¶ 5–6, 13–14.) And that is not only because AIF IX has no ownership interest in any other defendant. It is also because AIF IX is an investment vehicle through which funds merely pass, and because AIF IX has contracted with a distinct entity to make the decisions about where to invest its limited partners' funds. (*Id.* ¶¶ 4–5.) Even if its funds had been invested in some entity relevant here (and they were not), AIF IX could not direct or control the decisions of that entity. (*Id.* ¶¶ 5, 14.)

Further, AIF IX was not a party to the purchase agreements at issue here. (*Id.* ¶ 6.) Rather, AIF IX was one of several funds that guaranteed certain obligations of the purchasers to

the sellers – for example, to provide capital in the event of default by a purchaser (which did not happen). (*Id.*) AIF IX's guarantee was not a commitment *to DISH*, and is neither alleged to have nor in fact provided AIF IX any authority or control over any party to the agreements. (*Id.*) AIF IX had no right to, and in fact did not, direct or control any of the parties to the agreements, or direct or control when or how the transactions were structured or executed. (*Id.*) No other guarantor was named as a defendant.

**B.     The Transactions And Contracts At The Center Of This Lawsuit.**

On February 14, 2019, Terrier Media entered into agreements to buy two sets of local broadcast TV stations. In the first, Terrier Media agreed to buy NBI Holdings, LLC and certain of its affiliates ("NBI Holdings"), which included the broadcast TV stations referred to as the Northwest stations. (Ex. B, 3/4/19 FCC Application 68–210 (Northwest Purchase Agreement).) In the second, Terrier Media agreed to buy assets owned by Cox Enterprises, Inc. and certain of its affiliates, including what are referred to as the Cox stations. (*Id*. at 211–366 (Cox Purchase Agreement).) Numerous news outlets reported on the transaction throughout February 2019. (*See, e.g.*, Ex. F, 2/10/19 Reuters Article.)

As required by federal law, on March 4, 2019, the parties to the Northwest and Cox purchase agreements sought FCC approval of the transactions by filing public applications. (*E.g.*, Ex. B, 3/4/19 FCC Application.) The first sentences on the first page of the application stated:

> This application is one of several concurrently filed applications that seek the Commission's consent to two separate transactions. *In the first transaction,* Terrier Media Buyer, Inc. ("Terrier Media") will acquire companies owning all of the television stations owned by Northwest Broadcasting. *After acquiring those companies*, Terrier Media will acquire companies owning all of Cox's television stations and the licenses and other assets of four of Cox's radio stations.

(*Id.* at 10 (emphasis added).) In the first transaction, Terrier Media purchased NBI Holdings and the Northwest stations. In the second transaction, subsidiaries of NBI Holdings (which became a

subsidiary of Terrier Media as a result of the first transaction) purchased the Cox stations. (*See id.* at 10–11.) The parties to the Northwest and Cox Purchase Agreements thus made clear to the FCC – and the public generally – that the two transactions would proceed sequentially, with ownership of both sets of stations residing in NBI Holdings (the legacy owner of the Northwest stations), and with NBI Holdings as a subsidiary of Terrier Media.

Later the same month, DISH and Cox negotiated the Cox Retransmission Agreement. As a multichannel video programming distributor, DISH needs contractual consent to retransmit local TV station broadcast signals via satellite to its subscribers. Unless DISH has that consent, its retransmission of broadcast signals violates federal copyright law. Under the Cox Retransmission Agreement, the Cox stations consented to DISH's retransmission of their signals for the three-year term that DISH insisted upon, expiring on March 31, 2022. (Ex. A, Cox Retransmission Agreement § 2.) However, DISH knew when it negotiated that agreement that it could terminate sooner if the Cox stations were acquired by an entity that "already had a retransmission consent agreement with DISH." (Mem. 5 n.2.) DISH knew, as it concedes now, that under those circumstances "the Cox stations would be folded into the . . . preexisting agreement" of the acquiring entity. (*Id.*; *see also* Ex. A, Cox Retransmission Agreement § 17.) And DISH also knew that it had a separate retransmission agreement for the Northwest stations owned by NBI Holdings, which was set to expire on December 31, 2019. (Ex. G, Northwest Retransmission Agreement § 2; *see also id.* § 17.)

In sum, DISH knew all of the following at the time it negotiated and pushed for the Cox Retransmission Agreement: (1) the publicly filed FCC Applications expressly stated that if the transactions were approved by the FCC, Terrier Media would acquire NBI Holdings and the Northwest stations first, and then subsidiaries of NBI Holdings would acquire the Cox stations

thereafter, (2) DISH's own contracts provided that the right to retransmit the Cox stations' broadcast signals would cease to be governed by the Cox Retransmission Agreement, and would become governed by the Northwest Retransmission Agreement, if NBI Holdings came to own the Cox stations prior to the termination of the Northwest Retransmission Agreement, and (3) as a result, the right to retransmit the Cox stations' signals would terminate on December 31, 2019, along with the right to retransmit the Northwest stations' signals.

On December 17, 2019, the Northwest transaction closed and then the Cox transaction closed, precisely as described in the FCC filings nine months earlier. When the Cox transaction closed, the retransmission of the broadcast signals of the Cox stations became governed by the Northwest Retransmission Agreement. (*See* Ex. G, Northwest Retransmission Agreement § 17(c).) That Agreement expired on December 31, 2019, though DISH received several extensions, the last of which expired on January 18, 2020.

### C. Procedural History.

DISH filed this lawsuit in Illinois state court on January 15, 2020. In its complaint, DISH claims that the Cox Retransmission Agreement remains in effect because the Northwest and Cox transactions occurred simultaneously. (Compl. ¶¶ 3, 50.)[4] As relevant here, the complaint asserts two causes of action against AIF IX. DISH seeks a declaratory judgment against "All Defendants" regarding the Cox Retransmission Agreement (*id.*, Count I), though AIF IX is not alleged to be and is not a party to that contract. DISH also asserts a claim of unfair competition against "All Defendants" (*id.*, Count VII), though it does not allege any action by AIF IX.

Instead, DISH's only specific allegation about AIF IX (other than identifying it as a party and its citizenship) is the single conclusory allegation that AIF IX "controlled" Terrier Media.

---

[4] The complaint is attached to the Notice of Removal. (*See* Dkt. 1 at 17–44.)

(*Id.* ¶ 44.) Aside from that one allegation, the complaint pleads generic allegations against "Apollo," which the complaint confusingly defines as an amalgamation of two legally distinct entities. (*See id.*, preamble.) Nowhere does the complaint assert any ground for piercing the corporate veil or otherwise holding AIF IX liable for the conduct of any other entity.

At 1:03 p.m. CT the day it filed its complaint, DISH emailed a copy of the complaint and its motion for a TRO to Fred Levy, an out-of-state lawyer based in Washington, D.C. (Ex. H.) At 1:27 p.m. CT, DISH's counsel emailed Defendants the same and stated that he would notify them of the TRO hearing time. (Ex. I.) At 2:43 p.m. CT, DISH went before Judge Cohen for a TRO hearing; *two minutes into the hearing*, at 2:45 p.m. CT, DISH sent "notice" to Defendants and Mr. Levy that the hearing was occurring and, for the first time, identified the hearing location. (Ex. J; *see also* Ex. E, 1/15/20 Hr'g Tr. 9.) DISH obtained an *ex parte* TRO that day enjoining Defendants from "taking any action to interfere with performance of the Retransmission Consent Agreement between DISH and Cox." (Dkt. 1 at 292–94, 1/15/20 TRO.) Judge Cohen's TRO set a status conference for January 24.

On January 21,[5] the parties appeared before Judge Cohen, and he requested "written submissions" regarding the TRO. (Ex. M, 1/21/20 Hr'g Tr. 11; *see also* Ex. N, 1/24/20 Hr'g Tr. 59 ("on January 21st, defendants appeared, and at the Court's invitation, filed submissions")).) Judge Cohen made clear during the January 24 hearing, the first time he heard from the parties with the TRO briefed by *both* sides, that he considered the proceedings on that day "a brand-new TRO hearing de novo" (Ex. N, 1/24/20 Hr'g Tr. 8) – indeed, DISH insisted on arguing first as

---

[5] On January 20, Defendants electronically filed a letter with the state court requesting an opportunity to be heard the next morning. (Ex. K.) DISH calls this an "*ex parte* communication" (Mem. 6), even though Defendants served the letter on opposing counsel via email at 5:54 p.m. CT (Ex. L), immediately after electronically filing it, *and* discussed the letter with opposing counsel in a phone call that same night – more than 14 hours before the court appearance. DISH's counsel appeared the following morning precisely because Defendants had notified them the night before.

the moving party (*id.* 7) – and Judge Cohen recognized that Defendants were merely opposing

DISH's motion rather than seeking affirmative relief.[6] At the end of the January 24 hearing,

Judge Cohen ruled on DISH's motion for a TRO. (*Id.* 48–70.) That same day, having appeared

before the state court only to oppose the TRO, Defendants filed a Notice of Removal. (Dkt. 1.)[7]

## **ARGUMENT**

This case belongs in federal court. DISH agreed to bring disputes like this in federal court

so long as the federal court has subject matter jurisdiction over the dispute. (Ex. A, Cox

Retransmission Agreement § 18(a).) And this Court's subject matter jurisdiction over the parties'

actual dispute is clear. There is no question that the amount in controversy exceeds $75,000. And

when only the properly joined defendants are considered, there is complete diversity.

DISH has transparently attempted to evade its obligation to sue in federal court by

naming as a defendant AIF IX, a purely passive conduit of investment funds that did not even

invest in the entities at issue here. *AIF IX is not alleged to have taken any action relevant to this*

*case*. Nor could it have: it has no ownership interest in any party to the transactions at issue, and

it cannot and does not direct or control the actions of any party to those transactions. The

---

[6] At the motion hearing before this Court on February 5, DISH's counsel claimed that Defendants characterized their filing in state court "as a motion to dissolve." (Dkt. 32, 2/5/20 Hr'g Tr. 9–10.) That is incorrect. (Ex. O, 1/21/20 Order (order setting briefing schedule and directing Defendants to file "a response . . . to DISH's Motion for Temporary Restraining Order by January 22, 2020"); Ex. P, Defendants' Memorandum in Opposition to Plaintiff's Motion for Temporary Restraining Order).)

[7] DISH argues that "Defendants have failed to comply with 28 U.S.C. § 1446(b)(2)(A) by providing Cox's consent to this removal." (Mem. 1 n.1). However, that section provides that "[w]hen a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action." As DISH admits in its footnote, Cox Media Group, LLC consented to removal before the notice was filed. (*See also* Ex. Q.) For the avoidance of doubt, Cox Media Group, LLC has filed a written statement confirming its consent (Dkt. 44), which meets § 1446's requirements and cures any defect. *See Detrick v. Home Depot, U.S.A., Inc.*, 2013 WL 3836257, at *2 (N.D. Ill. July 23, 2013).

complaint seeks to hold AIF IX liable only for the actions of others, without even attempting to assert a factual or legal theory that could support derivative liability.

Defendants' appearance before the state court to oppose the TRO did not waive their right to remove. DISH had obtained an *ex parte* TRO without meaningful notice, and Defendants appeared in state court merely to oppose what they believed was a TRO wrongfully entered based on the state court's misunderstanding of key facts. Neither the law nor sound policy requires putting Defendants to the Hobson's choice of litigating in federal court without any opportunity to oppose a state court TRO, or opposing a TRO at the cost of sacrificing the right to litigate in federal court. This Court maintains jurisdiction under 28 U.S.C. §§ 1332 & 1441.

## I.     AIF IX Is Fraudulently Joined Because It Is Not Alleged To Have Taken Any Action Relevant To This Litigation, And Is Incapable Of Having Done So.

The "fraudulent joinder doctrine . . . permits a district court . . . to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 763 (7th Cir. 2009) (cleaned up). Fraudulent joinder occurs when "the plaintiff cannot establish a cause of action against the [nondiverse] defendant." *Poulos*, 959 F.2d at 73; *see also Schwartz v. State Farm Mut. Auto. Ins. Co.*, 174 F.3d 875, 878 (7th Cir. 1999) (nondiverse party should be disregarded if there is "no reasonable possibility" that the state court would find liability). In determining whether a defendant is fraudulently joined, the Court may "pierce the pleadings and consider summary judgment-type evidence such as affidavits and deposition testimony." *Veugeler v. Gen. Motors Corp.*, 1997 WL 160749, at *2–3 (N.D. Ill. Apr. 2, 1997) (cleaned up) (considering affidavit from defendant and denying motion to remand where plaintiff did "not link any action" of the defendant to the conduct at issue).

Here, there is no reasonable possibility that a court would find AIF IX liable with respect to the two counts pleaded against it: declaratory judgment and unfair competition. This is a contract dispute, but AIF IX is not a party to, and has no ownership interest in any party to, any of the relevant agreements. It had no right to, and in fact did not, direct or control any of the parties to those agreements. It also had no right to, and in fact did not, direct or control when or how the transactions were structured or executed. It is a purely passive investment vehicle that did not even invest in the transactions at issue here. Put simply, AIF IX has not and could not have participated in, controlled, or directed any of the conduct that DISH challenges in this case.

In an attempt to muddy the water and avoid this straightforward conclusion, DISH relies on collective pleading and a single conclusory allegation that AIF IX "controlled" Terrier Media, which was a party to the purchase agreements. That allegation of "control" is based on a false premise: that AIF IX is part of the ownership structure of Terrier Media reflected in the organizational chart cited by DISH. (*See* Mem. App'x A (Dkt. 25 at 17).) *But AIF IX is not on that organizational chart* because it has no ownership interest in Terrier Media. DISH's conclusory allegation of "control," unsupported by the evidence it is based on, would on its own preclude remand. But it is especially insufficient in light of the Sobel Declaration submitted with this memorandum, which makes AIF IX's lack of involvement with the transactions at issue unmistakably clear. More fundamentally, DISH has failed to meet even the most basic of pleading requirements because it has not properly alleged *any* action by AIF IX that would support either a declaratory judgment or unfair competition claim against it.

### A. DISH Fails To Allege Any Specific Action Taken By AIF IX.

Because this is a contract dispute and *none* of the contracts at issue names AIF IX as a party, DISH's remand motion relies on its assertions that AIF IX supposedly "controls" the entities actually named in the contracts and therefore can be held responsible for their actions.

10

(*See* Mem. 3, 12.) In particular, DISH asserts that AIF IX "controls" Terrier Media (Compl. ¶ 44), and that AIF IX "sits atop the organizational structure" (depicted in Appendix A to DISH's memorandum) that emerged as a result of the transactions that caused the Cox Retransmission Agreement to be terminated. (*See* Mem. 9.) DISH's motion to remand therefore rests on AIF IX's supposed ownership interest in the actual parties to the transactions at issue.

That foundational premise is simply wrong. In fact, AIF IX has no direct or indirect ownership interest in any of the parties to the transactions at issue. (Ex. C, Sobel Decl. ¶¶ 7–9.) *AIF IX is not on the chart attached as Appendix A to DISH's memorandum.* (*Id.* ¶¶ 7–8.) This chart depicts several other entities "sit[ting] atop the organizational structure," none of which DISH named as a Defendant. On this basis alone, this Court should deny the remand motion.

But there is more. DISH also has failed to allege that AIF IX actually did anything relevant to this case. Nor could DISH have done so. Even if it had an ownership interest in Terrier Media (which it does not), AIF IX could not control Terrier Media's actions or decision-making by virtue of any such ownership interest. (*Id.* ¶¶ 13–14.) AIF IX does not and cannot control the entities in which its limited partners' funds are invested. (*Id.* ¶ 5.) AIF IX had no involvement in the creation, timing, or execution of the disputed contracts – nor could it, because AIF IX is merely a passive investment mechanism with no employees. (*Id.* ¶¶ 3, 6.) Thus, far from being central to this lawsuit, as DISH asserts, AIF IX did not participate in any way in the decisions relevant to this suit.[8] DISH has failed to allege a single specific action taken by AIF IX

---

[8] DISH plucks out of context a passage from the FCC Application stating that "Apollo funds strategically build acquired businesses – for example, by using their financial wherewithal to provide follow on capital – and believe that they act as a steward for companies by supporting value creation." (Mem. 9; *see also* Ex. B, 3/4/19 FCC Application 12.) This generic reference to the "Apollo funds" managed by AGM and its subsidiaries does not support DISH's position. This passage simply means that the funds, which are managed by different entities, provide financial support for the companies in which they invest. That has nothing to do with any of the conduct at issue. DISH also cites a press release, but it is not about AIF IX;

that could conceivably support a finding of liability.[9] *See, e.g.*, *Bostik, Inc. v. CAN Fin. Corp.*, 2008 WL 11456203, at *2, 7 (E.D. Wis. Sept. 18, 2008) (fraudulent joinder where defendant was "merely a holding company" and not a party to or otherwise involved with the insurance policies at issue); *Bodine's, Inc. v. Fed. Ins. Co.*, 601 F. Supp. 47, 49–50 (N.D. Ill. 1984).

### B. DISH Improperly Relies On Collective Pleading In An Attempt To State A Cause Of Action.

Outside of a single conclusory – and unfounded – assertion regarding AIF IX's supposed "control" of Terrier Media, DISH studiously avoids attributing to AIF IX any action or decision that could conceivably support liability. Instead, DISH artfully deploys collective allegations that are both legally improper and factually inaccurate.

Despite acknowledging that Defendants AGM and AIF IX are distinct entities (*see* Compl. ¶¶ 10–11), DISH's complaint depends on collapsing both into a single fictional entity it calls "Apollo." (*Id.*, preamble). Then, rather than setting forth what each entity is accused of doing and how it relates to DISH's claims, DISH merely lobs collective allegations against the fictional "Apollo." (*See, e.g.*, *id.* ¶ 44 ("Terrier was created by Apollo"), ¶ 50 ("The crux of this dispute is Apollo's wrongful reliance upon the simultaneous acquisition of another broadcast group.").) The individual counts asserted against AIF IX only underscore this pleading failure. The only counts pleaded in the complaint against AIF IX are Counts I and VII, which are generally pleaded against "All Defendants." (*See id.* ¶¶ 81–86, 122–29.) These counts do not

---

rather, it discusses the funds listed in Terrier Media's ownership structure, which are the entities in DISH's Appendix A. (*See* Mem. 10; Dkt. 25-10; *accord* Mem. App'x A (Dkt. 25 at 17).)

[9] DISH implies that Defendants conceded that AIF IX is a proper defendant by previously informing the state court that Cox Media Group, LLC is "irrelevant" to the case. (Mem. 12–13.) Defendants described Cox Media Group, LLC as "irrelevant" to explain why that entity, which was not acquired in the transactions at issue, is not represented by the same counsel representing the other Defendants. That statement has nothing to do with this Court's jurisdiction.

even mention AIF IX. The complaint is utterly devoid of any factual allegation about any act or decision by AIF IX, let alone one that could be the basis of liability.

DISH's memorandum amplifies the sleight of hand improperly deployed in its complaint. In the complaint, "Apollo" is defined as a fictional combination of both AGM *and* AIF IX. (Compl., preamble.) But in its memorandum, DISH *redefines* "Apollo" as AIF IX (Mem. 2), and refers again and again to actions and decisions by the fictional "Apollo" alleged in the complaint (*e.g.*, *id.* at 3–4, 9, 12). The definition of "Apollo" in the memorandum cannot be squared with the definition of "Apollo" in the complaint.

Not only is this misleading, but the statements in the complaint about "Apollo" are not even applicable to AIF IX. For example:

- DISH alleges that "Terrier was created by [the fictional] Apollo." (Compl. ¶ 44.) However, AIF IX did not create Terrier Media. (Ex. C, Sobel Decl. ¶ 13.)

- DISH alleges that the fictional Apollo "crafted" the documents at the center of this lawsuit (Compl. ¶ 3), but AIF IX had no role in the creation, development, or execution of those contracts. (Ex. C, Sobel Decl. ¶ 6.)

- DISH alleges that the fictional Apollo "tr[ied] to engineer an early termination of the Cox Retransmission Agreement" (Compl. ¶ 50); however, AIF IX did not do this. As a passive investment entity, AIF IX cannot and does not exercise any control over *any* transactions. (Ex. C, Sobel Decl. ¶¶ 3–5.) Here, moreover, AIF IX is not even an investor in any of the parties to *these* agreements. (*Id.* ¶¶ 9, 11.)

DISH's collective pleading tactic amounts to little more than a fig leaf to conceal its failure to allege *any* conduct by AIF IX at all. As the Seventh Circuit has emphasized, "[l]iability is personal. . . . Each defendant is entitled to know what he or she did that is asserted to be wrongful. A complaint based on a theory of collective responsibility must be dismissed." *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013); *see also Chamberlain Grp., Inc. v. Techtronic Indus. N. Am., Inc.*, 2017 WL 4269005, at *2–3 (N.D. Ill. Sept. 26, 2017) (dismissing complaint that "lumps together all seven corporate defendants and states it will refer to them

'collectively' as 'TTI'" because "[a] complaint must set forth what each [entity] is accused of doing" and "the complaint tells us nothing about the individual actions of . . . the various TTI defendants"); *Rehabcare Grp. E., Inc. v. CC Care, LLC*, 2016 WL 2595108, at *6–7 (N.D. Ill. May 4, 2016) (same).[10] DISH's heavy reliance on collective allegations *confirms* that AIF IX was fraudulently joined in this case.

### C. There Is No Reasonable Possibility That The Complaint States A Cause Of Action Against AIF IX.

DISH's sole cognizable allegation against AIF IX is that it "controlled" Terrier Media (Compl. ¶ 44) and is therefore liable for Terrier Media's actions. Under clearly established law, DISH has not pleaded even a reasonable possibility of liability against AIF IX.

Legally, AIF IX cannot be held liable for the purported acts or omissions of other entities. As a corporation, the liabilities of Terrier Media are solely Terrier Media's. To disregard the corporate form, DISH must, at the very least, "seek that relief in [its] pleading." *S. Side Bank v. T.S.B. Corp.*, 419 N.E.2d 477, 480 (Ill. App. Ct. 1981). But DISH fails to allege *any* legal theory or doctrine under which AIF IX could be held liable for the alleged acts or omissions of other entities, including Terrier Media. *See Bevelheimer v. Gierach*, 339 N.E.2d 299, 303 (Ill. App. Ct. 1975) (plaintiff seeking to disregard a corporation's separate existence "must seek that relief in his pleading"); *Jacobs v. Paynter,* 727 F. Supp. 1212, 1215 (N.D. Ill. 1989) (same).[11]

---

[10] DISH's collective allegations also fail if the more demanding pleading standards of Illinois law apply. *See City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099, 1112 (Ill. 2004) (Illinois's fact-pleading requirement "imposes a heavier burden on the plaintiff" than notice pleading).

[11] Where, as here, jurisdiction is based on diversity, courts apply the forum state's choice-of-law rules to determine the governing substantive law. *CSX Transp., Inc. v. Chi. & N. W. Transp. Co.*, 62 F.3d 185, 188 (7th Cir. 1995). "Under Illinois choice of law principles, a choice-of-law determination 'is required only when a difference in law will make a difference in the outcome.'" *Johnke v. Espinal-Quiroz*, 2017 WL 3620745, at *7 (N.D. Ill. Aug. 23, 2017) (citation omitted). Because Delaware law provides the same rule, a choice-of-law analysis is unnecessary. *See Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1184 (Del. Ch. 1999). So too with New York law. *See E. Hampton Union Free Dist. v. Sandpebble Builders, Inc.*, 884 N.Y.S.2d 94, 98–100 (N.Y. App. 2009).

This is not a close case. The Seventh Circuit's on-point decision in *Poulos* shows why DISH's pleading failure requires dismissal of AIF IX. In *Poulos*, the plaintiff brought claims against a nondiverse parent corporation of a diverse subsidiary after the subsidiary had terminated a business relationship with the plaintiff. 959 F.2d at 73. Like DISH here, the plaintiff alleged that the parent "controlled" the subsidiary, but did not allege in the complaint any basis to hold the parent liable for the acts of the subsidiary. In moving to remand, the plaintiff argued that the "control" allegation plus the possibility he might ultimately succeed on a corporate-veil-piercing theory was enough to keep the nondiverse parent in the case. *See id.* at 73–74. The Seventh Circuit flatly rejected this argument, holding that the parent had been fraudulently joined and affirming its dismissal from the suit:

> Although [the plaintiff] alleged that [the parent] controlled [the subsidiary], he alleged no impropriety or disregard of [the] corporate form. Perhaps more importantly, there is simply no indication that [the parent's] presence in the suit was required to avoid any possible fraud: [the plaintiff] did not allege (nor, truthfully, could he allege) that the assets of [the subsidiary] would be insufficient to satisfy a judgment on his claims. . . . Although [the subsidiary] bears a heavy burden to establish fraudulent joinder, it need not negate any possible theory that [the plaintiff] might allege in the future: only his present allegations count.

*Id.* at 74 (citations omitted).[12] Here, the argument that AIF IX is not properly joined is even stronger than in *Poulos* because AIF IX is not the parent of Terrier Media (and does not have an ownership interest in any entities involved in any of the transactions at issue). In other words, even if DISH had articulated some kind of veil-piercing theory, it would not matter. Piercing the "veil" of Terrier Media would not lead to AIF IX, because AIF IX has no direct or indirect ownership interest in that entity.

---

[12] It did not matter that the plaintiff might amend the complaint with additional allegations in the future. As the Seventh Circuit explained, the jurisdictional inquiry turns on the current complaint, not any hypothetical amendment. *See Poulos*, 959 F.2d at 74 (concluding that joinder was fraudulent regardless of whether plaintiff "could have cured the problem with his complaint by amending it").

Putting to one side DISH's fatal pleading deficiencies with respect to improper collective pleading and the corporate form, there are additional problems with each count brought against AIF IX. Because AIF IX is not a party to any of the relevant contracts, the declaratory judgment DISH seeks with respect to the contract dispute does not present an actual controversy *with AIF IX*. *See* 735 ILCS 5/2–701(a) (requiring an "actual controversy" for a declaratory judgment action); *Becker v. Country Mut. Ins. Co.*, 2011 WL 221773, at *3 (S.D. Ill. Jan. 24, 2011) (defendant fraudulently joined where plaintiffs were "seeking declaratory judgment against [defendant] on issues that . . . would require this Court to issue a merely advisory opinion and thus, present no actual controversy"); *see also United Computer Sys., Inc. v. AT&T Corp.*, 298 F.3d 756, 761 (9th Cir. 2002) (fraudulent joinder where defendant was "not a party to any relevant contract on which plaintiff could predicate a claim against her" (quoting district court)).

DISH's claim for unfair competition against "All Defendants" cannot salvage its motion either. DISH asserts that "Defendants" misappropriated DISH's supposed right to retransmit the Cox stations' signals. (Compl. ¶ 124.) But that is the same right at issue in its contract claim. New York law, which DISH says governs this claim (Mem. 10), is unequivocal: "Where a plaintiff's unfair competition claim is based entirely on the same alleged conduct proscribed by contract, and plaintiff has pled a breach of contract claim, the unfair competition claim is dismissed as duplicative of the breach claim." *Bytemark, Inc. v. Xerox Corp.*, 342 F. Supp. 3d 496, 508 (S.D.N.Y. 2018); *see also ScentSational Techs., LLC v. PepsiCo, Inc.*, 2017 WL 4403308, at *18 (S.D.N.Y. Oct. 2, 2017) ("The existence of valid contracts . . . precludes Plaintiff from asserting separate causes of action for unfair competition."); *RCA Trademark Mgmt. S.A.S. v. VOXX Int'l Corp.*, 2015 WL 5008762, at *6 (S.D.N.Y. Aug. 24, 2015) (same).

AIF IX is not a party to any of the relevant contracts, and DISH cannot repackage its contract claim into an unfair competition claim in order to assert liability against AIF IX.

Moreover, the Court of Appeals of New York has emphasized the limited scope of the common-law unfair competition tort, noting it "is not to be equated with the far more amorphous term 'commercial unfairness.'" *Ruder & Finn Inc. v. Seaboard Sur. Co.*, 422 N.E.2d 518, 522 (N.Y. 1981). Indeed, as DISH concedes, the "gravamen of a claim of unfair competition is the bad-faith misappropriation of a commercial advantage . . . by *infringement or dilution of a trademark or trade name or by exploitation of proprietary information or trade secrets*." (Mem. 11 (quoting *Franklin First Fin., Ltd. v. Contour Mortg. Corp.*, 113 N.Y.S.3d 489 (N.Y. Sup. Ct. 2019) (emphasis added).) DISH alleges nothing of the sort.

## II.    Defendants Are Not Required To Establish Their Citizenship Through Summary Judgment Evidence, But In Any Event They Have Done So.

It is well-established that the party seeking to remove a case need not submit evidence establishing jurisdiction with the notice of removal. *See, e.g.*, *Belleville v. Cottrell, Inc.*, 2010 WL 1251442, at *2 (S.D. Ill. Mar. 24, 2010). Courts "apply the same liberal notice pleading standard to notices of removal" as set forth in Federal Rule of Civil Procedure 8(a). *Id.*; *see also Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 87 (2014). Yet DISH complains that Defendants have not yet submitted "competent evidence" of complete diversity. (Mem. 13.) The cases DISH cites required proof of diversity only after diversity was affirmatively contested and there was a dispute about a party's citizenship. *See Signicast, LLC v. Fireman's Fund Ins. Co.*, 920 F. Supp. 2d 967, 969 (E.D. Wis. 2013); *TIG Ins. Co. v. Reliable Research Co.,* 334 F.3d 630, 634 (7th Cir. 2003). DISH has not contested any of Defendants' citizenship allegations. Defendants' well-pleaded allegations therefore suffice.

Regardless, the properly joined Defendants have provided declarations establishing their

citizenship. (Ex. C, Sobel Decl. ¶ 15; Ex. D, Fennell Decl. ¶¶ 3–9.) They are completely diverse from DISH, and this Court's jurisdiction is secure.

## III.     Defendants Did Not Waive Their Removal Right By Opposing The TRO.

DISH's argument that Defendants waived their right to remove merely by opposing a TRO is meritless. (Mem. 14–15.) "A defendant's conduct in defending the state-court action prior to the end of the two statutory 30-day periods established by Section 1446(b) will not constitute a waiver of the right to remove." 14C Wright & Miller, Fed. Prac. & Proc. § 3731 (Rev. 4th ed. 2019). Insofar as a party can waive its removal right through actions in state court during those 30-day periods, appearing before a state court to oppose a TRO does not do so.

This rule is so well-settled that the Seventh Circuit issued a writ of mandamus requiring a district court to entertain an action after it had ruled that opposing a motion for a TRO waived the defendant's removal right. *See Rothner v. City of Chicago*, 879 F.2d 1402, 1418–19 (7th Cir. 1989) (applying "the long-settled rule that opposing a motion for a [TRO] in state court does not waive the right to remove"); *see also Cahill v. Ivex Novacel, Inc.*, 2004 WL 2064305, at *3 (N.D. Ill. Sept. 1, 2004) (TRO filing was "insufficient to warrant a finding of waiver"); *Radaszewski v. Garner*, 2002 WL 31430325, at *5 (N.D. Ill. Oct. 21, 2002) (defendant did not waive removal by filing response to plaintiff's motion to extend TRO and filing answer); *Blair v. City of Chicago*, 1988 WL 6918, at *1 (N.D. Ill. Jan. 26, 1988) (defendants did not waive removal by opposing TRO and, after TRO was issued, "by opposing its extension" because "opposition to provisional equitable remedies, without more, does not waive the right of removal").

The cases DISH cites do not undermine the controlling authority of *Rothner*. In *Fate v. Buckeye State Mutual Insurance Co.*, 174 F. Supp. 2d 876 (N.D. Ind. 2001), almost a year passed between when the complaint was filed and when the defendant requested removal. During that year, the defendant moved to dismiss the case and attempted to bifurcate the trial. *Id.* at 878. The

court held that the "intent of these motions was not to merely defend against plaintiff's claims, but to dispose of the case altogether." *Id.* at 882. Here, in contrast, Defendants have merely opposed DISH's TRO, an action that had no bearing on the merits of this case. The other cases DISH cites also involve dispositive motions or timeliness problems not present here. *See Handlon v. Allis-Chalmers Coal Gas Corp.*, 666 F. Supp. 153, 153–54 (S.D. Ill. 1987) (defendant sought to remove after state court dismissed its third-party complaint); *Kiddie Rides USA, Inc. v. Elektro-Mobiltechnik GMBH*, 579 F. Supp. 1476, 1480 (C.D. Ill. 1984) (state court's denial of defendant's motion to vacate the order of attachment "combined with the untimeliness of the removal[] [were] sufficient to constitute a waiver").

DISH asserts that Defendants are using removal to obtain review of the state court's TRO ruling. (*See* Mem. 14–15.) That is not so. Defendants have not asked this Court to vacate the TRO. The parties have discussed next steps in this Court, including briefing and a hearing on DISH's forthcoming motion for a preliminary injunction.[13] But those are the same next steps that would take place if this case remained in state court. (Ex. N, 1/24/2020 Hr'g Tr. 69:6–12.)

Both practical considerations and respect for the general rule against using federal courts to review state court rulings provide good reasons why the law does and should allow a defendant to appear before a state court to oppose a TRO without waiving its removal rights. In this case, DISH contractually agreed to a federal forum, fraudulently joined a party to escape that forum, and then rushed into state court without providing Defendants any meaningful notice and obtained an *ex parte* TRO. Defendants have the right *both* to try to free themselves expeditiously from the burdens of a wrongfully entered *ex parte* TRO *and* to the federal forum the contract

---

[13] Defendants recognize this Court's busy schedule and are confident that an appropriate preliminary injunction schedule can be set that accommodates this Court's competing demands.

requires. Neither the efficient nor fair administration of justice supports requiring a party to sacrifice *either* its right to oppose a TRO or its right to a federal forum because a plaintiff has unilaterally manipulated the judicial process.

*    *    *

Separately, DISH's memorandum includes a single sentence, with no supporting argument, seeking an "award of attorneys' fees." (Mem. 15.) DISH's bald request should be rejected. *See, e.g.*, *Starchvill v. Dart*, 2018 WL 3456525, at *4 n.1 (N.D. Ill. July 18, 2018). In addition, "courts may award attorney's fees under 28 U.S.C. § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). The evidence and legal arguments in support of removal presented here clearly exceed that low threshold.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should deny DISH's motion to remand and should dismiss AIF IX from the case.

Dated: February 10, 2020

Respectfully submitted,

*/s/ Hille R. Sheppard*
Scott Lassar (No. 1586270)
Bruce R. Braun (No. 6206628)
Hille R. Sheppard (No. 6226077)
John M. Skakun III (No. 6297636)
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036
slassar@sidley.com
bbraun@sidley.com
hsheppard@sidley.com
jskakun@sidley.com

*Counsel for Defendants*
*(other than Cox Media Group, LLC)*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 10, 2020, I caused the foregoing to be electronically

filed using the CM/ECF system, which will send notice of this filing to all counsel of record.


<u>/s/ Hille R. Sheppard</u>
Hille R. Sheppard (No. 6226077)
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
(312) 853-7000
hsheppard@sidley.com

*Counsel for Defendants*
*(other than Cox Media Group, LLC)*