UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DISH NETWORK L.L.C., | |
| Plaintiff, | No. 20 C 570 |
| v. | Judge Thomas M. Durkin |
| COX MEDIA GROUP, LLC, APOLLO GLOBAL MANAGEMENT, INC, APOLLO INVESTMENT FUND IX, L.P., TERRIER MEDIA BUYER, INC., NBI HOLDINGS, LLC, BRYSON BROADCAST HOLDINGS, LLC, NORTHWEST BROADCASTING, L.P., NORTHWEST BROADCASTING, INC., CAMELOT MEDIA BUYER, INC., and CAMELOT MEDIA HOLDINGS, LLC, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff DISH Network's motion for leave to file an amended complaint in order to join five additional defendants that are affiliated with Defendant Apollo Global Management. R. 52. DISH's motion is granted in part and denied in part.

**Background**

DISH filed this case in the Circuit Court of Cook County on January 15, 2020 alleging several claims related to its rights under the Cox Retransmission Agreement, which permits DISH to retransmit certain Cox television stations. DISH also moved for a TRO to prevent Defendants from interfering with its right to retransmit Cox stations, which the state court granted *ex parte*. On January 21, Defendants moved

to dissolve the TRO. The state court held a hearing on January 24, after which it entered an interim order upholding the TRO. That same day, Defendants filed a notice of removal contending that DISH had fraudulently joined Defendant Apollo Investment Fund IX LP (AIF IX) to destroy diversity jurisdiction. DISH subsequently filed a motion to remand, which the Court denied. *See* R. 57.

On the same day DISH filed its reply in support of its motion to remand, DISH also filed a motion for leave to file an amended complaint. The amended complaint seeks to join five additional Defendants affiliated with Defendant Apollo Global Management: AP IX (PMC) VoteCo, LLC ("VoteCo"); AP IX Titan Holdings GP, LLC ("Titan Holdings GP"); AIF IX (PMC Equity AIV), L.P. ("PMC Equity"); AP IX Titan Holdings, L.P. ("Titan Holdings"); and Apollo Advisors IX, L.P. ("Apollo Advisors").

Complete diversity exists between DISH (on one side) and VoteCo and Titan Holdings GP (on the other) and Defendants do not contest their joinder. But Defendants oppose DISH's motion to the extent the amended complaint seeks to join PMC Equity and Titan Holdings, which are not completely diverse from DISH, and Apollo Advisers, which for the purposes of this motion Defendants assume would also constitute a nondiverse party.

**Legal Standard**

District courts have discretion to permit or deny post-removal joinder of nondiverse parties, and they should balance the equities to make that determination. *Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 759 (7th Cir. 2009). In considering whether to allow a plaintiff to join a nondiverse defendant after removal

to federal court, courts should consider the following factors: "1) the plaintiff's motive for seeking joinder, particularly whether the purpose is to defeat federal jurisdiction; 2) the timeliness of the request to amend; 3) whether the plaintiff will be significantly injured if joinder is not allowed; and 4) any other relevant equitable considerations." *Id.* "When joinder of a non-diverse party would destroy subject matter jurisdiction, 28 U.S.C. § 1447(e) applies and provides the district court two options: (1) deny joinder, or (2) permit joinder and remand the action to state court." *Id.*

## Analysis

### I. Plaintiff's Motive

Plaintiffs are generally given wide latitude to choose their own forum but they "may not join a nondiverse defendant simply to destroy diversity jurisdiction." *Id.* at 763. While not dispositive, the fraudulent joinder doctrine provides a helpful tool for scrutinizing a plaintiff's motive in seeking joinder. *Id.* at 764. "Fraudulent joinder occurs either when there is no possibility that a plaintiff can state a cause of action against nondiverse defendants in state court, or where there has been outright fraud in plaintiff's pleading of jurisdictional facts." *Hoosier Energy Rural Electric Co-op., Inc. v. Amoco Tax Leasing IV Corp.*, 34 F.3d 1310, 1315 (7th Cir. 1994) (quoting *Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir. 1993)). Removing defendants "bear a heavy burden to establish fraudulent joinder," and must show that "after resolving all issues of fact *and law* in favor of the plaintiff, the plaintiff cannot establish a cause of action against the in-state defendant." *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992). In conducting this review, "the Court is not limited

3

by the allegations of the parties' pleadings but may 'pierce the pleadings' and consider 'summary judgment-type evidence such as affidavits and deposition testimony' in determining whether fraudulent joinder has occurred." *Veugeler v. General Motors Corp.*, 1997 WL 160749, at \*2 (N.D. Ill. Apr. 2, 1997) (quoting *Peters v. AMR Corp.*, 1995 WL 358843, at \*3 (N.D. Ill. June 13, 1995)) (internal quotation marks omitted).

The crux of this dispute is that Defendants engineered an early termination of the Cox Retransmission Agreement to deprive DISH of its rights. DISH alleges that Defendants did so by orchestrating a scheme to establish an entity called Terrier Media Buyer Inc. to acquire the Cox and Northwest stations, and to structure the acquisitions in a manner that Defendants claim terminated DISH's rights under the Retransmission Agreement. The maneuvers would result in DISH paying more to retransmit the Cox stations than it had agreed to pay with Cox. As it pertains to the proposed nondiverse entities, Defendants submitted an affidavit from Aaron Sobel, a principal at Defendant Apollo Global Management, which states that PMC Equity, Titan Holdings, and Apollo Advisors had no role in the creation, timing, or execution of any of the agreements or transactions at issue. R. 68-4 ¶¶ 7, 12. Sobel's affidavit also states that the entities did not direct or otherwise influence the decision to buy the Northwest and Cox stations. *Id.* ¶¶ 8, 13. That of course suggests that DISH cannot state a claim against the proposed defendants. DISH responds that Defendants are improperly attempting to turn this into a motion for summary judgment, and that the Court should not take Sobel's affidavit at face value.

To be sure, if DISH had submitted conflicting evidence or the amended complaint contained contrary allegations against PMC Equity, Titan Holdings, or Apollo Advisors, the Court would resolve the dispute in DISH's favor. But far from it, the amended complaint specifically references PMC Equity, Titan Holdings, and Apollo Advisors only once each:

- "On information and belief, [Titan Holdings] is in active concert with the other Defendants; it is one of the other Apollo-affiliated funds that invested in the transactions at issue and owns the majority interest in Terrier." R. 52-2 ¶ 13;

- "On information and belief, [PMC Equity] is in active concert with the other Defendants; it is the vehicle through which dozens of partners have invested in the transactions at issue." *Id.* ¶ 15;

- "On information and belief, [Apollo Advisors] is in active concert with the other Defendants; it is the general partner of [AIF IX] and operates and controls [AIF IX]." *Id.* ¶ 12.

There is not a single specific reference to Titan Holdings, PMC Equity, or Apollo Advisors in the amended complaint's "Factual Background" or "Claims" sections, which together run some 20 pages and 107 paragraphs. Indeed, the only two counts that include the proposed three new defendants – Count I for a declaratory judgment that the Cox Retransmission Agreement remains in effect and Count VII for unfair competition – are against "All Defendants" and are identical to the original complaint.

DISH contends that it named the wrong Apollo entity in the original complaint, and now seeks to join the actual Apollo entities that were involved. But DISH's allegations against Titan Holdings, PMC Equity, and Apollo Advisors suffer from the same infirmity as its allegations against AIF IX; namely, nothing suggests the entities had even the slightest active involvement in the transactions at issue outside

5

of funding, a fact which Sobel's affidavit confirms. And as the Court explained regarding AIF IX in its previous order denying DISH's motion for remand, investing in a transaction without more is not enough to state a claim for unfair competition or declaratory judgment. *See* R. 57 at 6. DISH points out that unlike AIF IX, Titan Holdings owns and controls Terrier. But the FCC application cited by DISH concerns who will control Terrier *after* the closing of the Cox and Northwest transactions. *See* R. 25-7 at 70 ("[Titan Holdings] *expects* to hold approximately 77% of the stock of Terrier Holdings and thus will control Terrier Holdings . . . .") (emphasis added). That is a separate question from who orchestrated and controlled the transactions prior to their execution, which is the gravamen of DISH's complaint. And, again as explained regarding AIF IX in the Court's order denying remand, DISH provides no reason why Terrier's corporate veil should be pierced to include its parent company. *See* R. 57 at 5-6; *Poulos*, 959 F.2d at 73-74 (fraudulent joinder where plaintiff alleged no impropriety or disregard of corporate form that would justify piercing corporate veil).

DISH argues that unlike in *Poulos*, it seeks to hold the proposed nondiverse defendants accountable for their own actions as opposed to the actions of their subsidiaries. But the complete lack of specific allegations against Titan Holdings, PMC Equity, or Apollo Advisors (coupled with Sobel's affidavit stating their lack of involvement) suggests otherwise. DISH also contends that it may rely on collective pleading because the Apollo entities acted jointly. But DISH's actual position seems to be that "*some* Apollo entity acquired control over the Cox stations in order to extricate them from their retransmission agreements and achieve higher rates," R.

72 at 7 (emphasis in original), and it's just not sure which one. *See also id.* ("*Someone* committed the torts of interference with DISH's contract with Defendant Cox Media Group LLC ("Cox") and unfair competition through the misappropriation of DISH's competitive advantage.") (emphasis in original). But neither of the articles DISH cites to support that position references the proposed nondiverse defendants. Rather, both articles report that *Apollo Global Management* agreed to purchase the Cox stations. *See* R. 47-7; R. 51-2. Likewise, the FCC application for the transactions cited by DISH states that "Principals of [*Apollo Global Management*] and its subsidiaries (collectively 'Apollo') manage various funds, including the funds involved in the instant transaction, and provide strategic and financing advice to the Apollo funds' portfolio companies." R. 25-7 at 71 (emphasis added). Apollo Global Management is already a defendant in this case. To the extent the application says Apollo Global Management "and its subsidiaries," there's no evidence the subsidiaries providing strategic and financing advice includes the nondiverse defendants, and Sobel's affidavit directly states that it does not. Indeed, the paragraph does not mention Titan Holdings, PMC Equity, or Apollo Advisors. And the language appearing directly before that sentence describes that Apollo Global Management is one of the largest alternative asset managers in the world with over 1,000 employees. *Id.* The same logic could be used to attempt to join any Apollo subsidiary worldwide. That goes too far. And that Apollo and its subsidiaries manage funds and provide advice to portfolio companies is still consistent with Sobel's affidavit stating that PMC Equity and Titan Holdings have no employees and that their investment decisions are made by or

7

through VoteCo (an Apollo subsidiary and now also a defendant in the case), and that Apollo Advisors did not have a role in purchasing the Cox and Northwest stations or deciding how to sequence those transactions. R. 68-4 ¶¶ 3, 4, 13. More directly to the point of this motion, the Court suspects that DISH would not be attempting to join additional Apollo entities if Apollo Global Management could destroy diversity jurisdiction, which it does not, as it is a Delaware corporation with its principal place of business in New York.

DISH contends that its motive for adding the nondiverse defendants cannot be to defeat diversity jurisdiction because it had no way of knowing their citizenship prior to filing its motion for leave to amend its complaint. But while DISH may not have known that information conclusively, it certainly suspected their citizenship may destroy diversity, as evidenced by DISH's reply in support of its motion to remand. *See* R. 51 at 13 ("The addition of [the new defendants] may be an additional ground defeating diversity to the extent that the partners of [PMC Equity] include citizens of Colorado.").[1]

In sum, the amended complaint does not contain a single allegation about an affirmative act taken by Titan Holdings, PMC Equity, or Apollo Advisors outside of providing capital (or an investment vehicle) for the transactions at issue. The absence of factual allegations is underscored by Sobel's affidavit stating that the entities had no role in the creation, timing, or execution of the agreements or transactions at issue, and DISH's failure to offer any meaningful evidence to the contrary. This leads the

---

[1] DISH is a Colorado citizen.

Court to conclude that DISH cannot state a cause of action against the proposed nondiverse defendants, and coupled with DISH's express speculation that adding the defendants would defeat federal jurisdiction, that DISH's motive for joinder is to return this case to state court.

## II. Timeliness

An extensive delay between removal and a motion to amend typically weighs against joinder. *Schur*, 577 F.3d at 767. That consideration does not apply here as no discovery has taken place and Defendants have not yet answered the complaint. At the same time, a motion to amend filed immediately after removal but without discovery may suggest the purpose is to defeat diversity. *Id*. Defendants argue that DISH's decision to file its motion for leave to amend contemporaneously with its reply in support of its motion to remand (especially given that DISH previously knew of the proposed new parties) clearly evinces a purpose to defeat diversity should the Court deny the motion to remand. DISH responds that Defendants' opposition to the motion to remand clarified Terrier's corporate structure, and that it now seeks to join the proper Apollo entities. The Court agrees with Defendants that DISH's filing a motion to add new parties the same day it risked losing its motion to remand is suspicious, but at the same time acknowledges that DISH appears to have genuinely mistook AIF IX as included on Terrier's corporate chart. Nevertheless, DISH's contention that Defendants said the proposed Apollo entities (as opposed to AIF IX) were the proper parties to sue mischaracterizes Defendants' representations. Defendants simply pointed out that the additional entities (as opposed to AIF IX) were who appeared on

9

Terrier's corporate chart. Had Defendants' opposition to the motion to remand actually pointed the finger at the additional entities as culpable, or had the amended complaint included new substantive allegations against them, DISH's argument would be more credible. But as it stands, the amended complaint does little more than add names of new nondiverse parties. Combining that with the fact that DISH filed the amended complaint on the same day it risked losing a motion that would keep the case in federal court, suggests its purpose was to defeat federal jurisdiction.

### III. Injury to Plaintiff if Joinder is not Allowed and Other Equitable Considerations

Perhaps most importantly, DISH has yet to articulate a valid reason why it will be injured if joinder is not permitted. Turning first to DISH's declaratory judgment claim, Titan Holdings, PMC Equity, and Apollo Advisors are not parties to the Cox Retransmission Agreement. DISH does not explain (nor could it) why the additional parties are necessary to be afforded complete relief on a declaratory judgment action when Cox (with whom DISH made the agreement) and the current station owners are already named defendants in the case. DISH's unfair competition claim fares no better. By DISH's own admission, the alleged scheme's architect (Apollo Global Management), the sellers (Cox and Northwest Broadcasting), the buyer (Terrier), and the current station owners (NBI Holdings and Camelot), are all already named defendants. R. 72 at 8. And now so is VoteCo, which sits atop Terrier's ownership chart. Importantly (and tellingly), DISH has not *once* contended that it cannot obtain a full recovery from the existing defendants. *See Zuccaro v. Ford Motor Co.*, 2003 WL 22668834, at *3 (N.D. Ill. Nov. 5, 2003) (denying joinder where there

10

was no indication the plaintiff could not fully recover from the existing defendant). The closest DISH comes to making that assertion is that "Apollo and its affiliates have demonstrated that they will not abide by their obligations, whether under contract or court order." R. 72 at 26. But even if true (the Court assumes DISH is implying that Apollo can't be trusted to pay a judgment), there's no reason to believe adding more Apollo affiliates would change that. DISH also takes the position that it should be able to sue any and all the tortfeasors responsible for its injury. But this ignores the entire point of a post-removal joinder analysis.

To be sure, the Court also discerns no real harm to Defendants if it permits joinder and remands the case. No discovery has taken place and there is no reason to believe joining more Apollo entities would be an undue burden since Apollo Global Management is already a defendant. Moreover, DISH is not an Illinois citizen, which extinguishes possible concerns about home-state favoritism. Ultimately, the Court finds neither party risks significant injury.

In no uncertain terms, DISH accuses Defendants of jurisdictional gamesmanship by opposing the TRO in state court and filing a notice of removal only after they lost. In turn, Defendants label DISH's motion to amend as nothing more than a diversity-defeating ploy. Frankly, both parties appear to be forum shopping.[2] But even if the parties' motives are the same, the Court's role is to apply the law. The law permits a party to oppose a motion for a TRO without waiving its right to removal.

---

[2] The Court does not understand why this is the case. The substantive law to be applied is likely the same and DISH can seek its requested relief in either forum.

*See* R. 57 at 3. It does not permit a party to join nondiverse defendants for the purpose of defeating federal jurisdiction. Applying the framework from *Schur*, the timing of DISH's motion and lack of substantive allegations against the proposed entities suggests DISH's motive is to destroy diversity. And DISH does not provide a persuasive explanation why it will be "significantly injured" if joinder is not permitted. Accordingly, the Court denies DISH's motion to the extent it seeks to join Titan Holdings, PMC Equity, and Apollo Advisors.

### IV. Limited Discovery on Issues Regarding Joinder

In the alternative, DISH requests leave to conduct limited discovery on the nondiverse parties, including: "their involvement in the transactions at issue, their ownership and control of the Cox Stations, the motives underlying the involvement of each in the acquisition of the Cox Stations, and their corporate structure and formalities." R. 72 at 31. There is currently a TRO in place and the Court sees no reason to grant DISH's request and delay the case further. If information surfaces during the course of discovery to suggest Titan Holdings, PMC Equity, or Apollo Advisors played a greater role in the transactions at issue than Defendants have represented, DISH may bring it to the Court's attention at that time.

### Conclusion

For the reasons stated, DISH's motion for leave to file an amended complaint [R. 52] is denied to the extent DISH seeks to join Titan Holdings, PMC Equity, and Apollo Advisors. To the extent DISH seeks to join VoteCo and Titan Holdings GP, Defendants do not object and DISH's motion is thus granted. The parties should meet

and confer and submit a joint status report by April 24, 2020 to inform the Court on how they wish to proceed in the case.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: April 10, 2020