**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DISH NETWORK L.L.C., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:20-CV-00570 |
| ) | Hon. Thomas M. Durkin |
| ) | |
| COX MEDIA GROUP, LLC et al., ) | |
| ) | |
| Defendants. ) | |

**JOINT STATUS REPORT**

Pursuant to the Court's Order of April 29, 2020, Plaintiff DISH Network L.L.C. and Defendants Terrier Media Buyer, Inc. d/b/a Cox Media Group ("Terrier Media"), NBI Holdings, LLC, Bryson Broadcast Holdings, LLC, Northwest Broadcasting, L.P., Northwest Broadcasting, Inc., Camelot Media Buyer, Inc., Camelot Media Holdings, LLC, Apollo Global Management, Inc., AP IX (PMC) VoteCo, LLC, and AP IX Titan Holdings GP, LLC (collectively, the "Terrier Media Defendants") respectfully submit this joint status report regarding deadlines for document production and a proposed briefing schedule, and regarding their disagreements on those matters. Plaintiff's position is set forth in Section I and the Terrier Media Defendants' position in Section II. Defendant Cox Media Group LLC joins the Terrier Media Defendants' position on the proposed deadlines for document production and proposed briefing schedule.

**I.     Plaintiff's Position**

    **A.     Scope of Discovery**

The disagreements between the parties include ones on the proposed schedule and ones on the scope of discovery and the standards for evaluating the sufficiency of discovery. Most

crucially, Defendants[1] try to extricate themselves from the federal rules that govern all discovery, no matter how extensive or limited. They have rejected a list of documents proposed by Plaintiff (listed below), and they remarkably have also rejected an innocuous phrase that Plaintiff suggested including in the proposed scheduling order to confirm that the document production will be conducted "consistent with the requirements of Fed. R. Civ. P. 26 and 34." They do this with the apparent goal of confining their discovery to a carefully curated set of documents seemingly cherry-picked to support their position. But the Court has allowed discovery on "documents and communications (including letters, emails, text messages, and other message platforms) related to the sequencing and closing of the transactions whereby Apollo and its affiliates acquired the Cox stations and the Northwest stations on or around December 17, 2019." Dkt. No. 83. To be meaningful, such discovery should extend to additional documents that Plaintiff has requested, including things like the offering memorandum and closing checklist, because the plans reflected in those documents about the structure of these transactions, and whether these plans were fulfilled or deviated from, are obviously relevant to the question on which the Court allowed discovery.

Plaintiff believes it is necessary to clarify the scope of the discovery as soon as possible, in order to avoid the need for motions practice at a later date. Counsel for both sides have conferred, and counsel for Defendants have agreed to search for and produce a limited set of documents that

---

[1] Plaintiff notes that Cox Media Group has not provided its position regarding the scope of discovery or whether it intends to produce any documents at all. On May 4, counsel for the other Defendants emailed counsel for Plaintiff, stating that we should "contact its [Cox] counsel regarding what documents it will or will not produce." Counsel for Plaintiff subsequently emailed counsel for Cox at 12:54pm. Counsel for Cox responded at 9:58pm that they are "available to meet and confer on proportional, nonduplicative expedited discovery as limited under the April 29 order." Plaintiff reserves its rights in the event that it is not able to reach an agreement with Cox regarding these issues.

are described as "sufficient to show" certain propositions. At the same time, the Defendants have not agreed to be bound by the federal rules on discovery.

Plaintiff believes this offer is insufficient to fulfill the scope of the discovery ordered by the Court, which must include specifics regarding how the closing process was conducted and why it was conducted that way—both of which are critical fact questions to Plaintiff's claims. In almost every category of documents they propose to submit, Defendants' formulation suggests an undue effort to circumscribe their production. Their use of the recurring phrase "sufficient documents to show that" means that other documents that are responsive and that may show the opposite from the proposition favored by Defendants will not be produced. Defendants should be required to produce all documents relating to these questions, and if they contend those documents are privileged, then they should also be required to submit an index of privileged documents so that the privilege claims can be resolved.

Furthermore, Defendants are improperly attempting to limit their search to just two days—December 16 and 17, 2019—which is deficient on its face because the sequencing and closing of the two transactions at issue was a topic of significant discussion well before December 2019. The sequencing and closing issues were present when the Northwest and Cox purchase agreements were executed in February 2019, and Defendants maintain that the acquisitions were orchestrated over the ensuing months with specific attention to the conditions precedent, the precise timing of closing events, and the entities involved, in order to effectuate Defendants' plan and consummate the transactions months later in December 2019. Plaintiff explained these issues in its Verified Complaint, noting the following fact issues:

- The Northwest Acquisition Agreement specifies that the two agreements were executed "concurrently" rather than sequentially.

3

- By its terms, the Northwest transaction could not close until after Cox and Terrier had obtained the rights to close their transaction.

- While the Northwest Acquisition Agreement contemplates closing "immediately prior to . . . the closing of the transactions contemplated by the Camelot [Cox] Purchase Agreement," the ability to close the Camelot Purchase Agreement is a condition precedent to the obligations of the Buyer (Terrier) and the Sellers (Northwest's owners) for the Northwest Acquisition Agreement, creating an inconsistency which likely was the subject of documentary exchanges and the resolution of which bears directly on the timing of the closings.

- The Northwest Acquisition Agreement could not be amended or modified without the prior written consent of Cox.

- The Camelot Purchase Agreement provides "for the avoidance of doubt, that the consummation of the transactions contemplated by the Northwest Acquisition Agreement shall not be a condition to Buyer's obligation to consummate the Closing."

- In any event, the Cox Stations were not even acquired by Terrier (the Apollo entity that acquired the interests in the Northwest stations). While the Camelot [Cox] Purchase Agreement provides for Terrier to acquire these interests, an assignment agreement dated December 16, 2019 assigns to the Camelot subsidiaries pre-closing Terrier's contractual rights to the Cox Stations. This means that there likely was an exchange of documents concerning that the Cox Stations were never acquired by an entity in which the Northwest stations were housed.

Plaintiff proposes that the following materials should be included in Defendants' search and production, without the two-day date limitation proposed by Defendants:

1. Offering memo and any other documents provided to potential investors explaining the acquisitions of the Cox stations and the Northwest stations by Apollo and its affiliates;

2. Any closing checklist;

3. Materials relating to the satisfaction, release, or waiver of the closing conditions and the timing of the satisfaction, release or waiver of the closing conditions;

4. Materials relating to the sources and delivery of any funding for the acquisitions;

5. Materials relating to the timing (including the precise timing) of the closing of each of the acquisitions, including times when deliveries and funding

        called for by agreements governing each closing were, in fact, delivered and funded;

6. Materials relating to the waiver and/or satisfaction of closing conditions affecting the timing of the transactions and the entities who satisfied such conditions, including when they were satisfied;

7. Materials relating to which entity acquired or currently owns the Cox stations and the timing (including the precise timing) of the acquisition or change in ownership of the Cox stations; and

8. Anything that supports or contradicts Defendants' contention that the Northwest station acquisition did in fact close before the Cox acquisition and the Cox stations became "After Acquired" stations under the Northwest Retransmission Agreement.

Numbers 1 and 2 are necessary to show Defendants' plan, including how the transactions were intended to be sequenced and closed. This would be the natural topic of representations to investors (particularly if the investment strategy was to extract higher retransmission rates by attempting to terminate the Cox Retransmission Agreement). A checklist is also necessary to determine if the closing was conducted as Defendants now contend it was.

Numbers 3 through 7 are necessary to confirm whether closing conditions were satisfied, by whom, and at what time. Defendants' proposal is too limited. Most importantly, Defendants have not agreed to produce materials related to the precise timing of the transactions or the chain of ownership through which the Cox and Northwest stations passed after allegedly being acquired by Terrier Media Buyer. These two facts are critical to analyzing Defendants' claim that the Cox stations became subject to the "after-acquired station clause" of the Northwest Retransmission Agreement, which necessarily entails an analysis of which stations were acquired by which Defendants (or affiliates) at which times. Additionally, Defendants refuse to produce materials regarding satisfaction of closing conditions, which is necessary to confirm that the closings were consummated. And they agree to produce some funding materials but refuse to agree to identify

5

the sources, which is necessary to confirm that the transactions were funded according to the closing conditions.

Number 8 goes to the heart of the issue for Plaintiff's preliminary injunction motion. It may be subsumed by the other materials to be produced, but Plaintiff wants to ensure that Defendants' make a fulsome production by the May 15 deadline. Plaintiff does not want to see new materials included with Defendants' opposition brief on June 18.

Defendants incorrectly accuse DISH of seeking full-blown merits discovery. This is obviously not the case—eight requests are a fraction of the usual discovery permitted in complex commercial disputes. DISH has always made clear that the discovery it seeks for purposes of its preliminary injunction motion is a limited subset of the full discovery that DISH will need in this case.

Furthermore, DISH did not sit on its hands with respect to discovery. As explained in the April 21 letter to counsel for Defendants (Dkt. No. 81-1 at pages 1-2), DISH requested discovery in January and repeated its request in February. DISH also has requested a Rule 26(f) conference. To date, Defendants have ignored DISH's requests and refused to provide the requested discovery or a date for a conference.

**B.     Scheduling Order**

Plaintiff proposes the following schedule to be entered by the Court:

1. Plaintiff will file its Motion for a Preliminary Injunction forthwith. Plaintiff shall file its supporting materials and Defendants shall file their opposition materials on the schedule set forth below.

2. The parties shall file a proposed protective order governing the treatment of confidential information on or before May 12, 2020. The parties will treat all materials produced prior to May 12, 2020 as governed by the terms of the protective order, when entered.

3. The parties shall undertake a reasonable search and review for documents addressed in the Court's April 29, 2020, minute entry, and shall produce responsive, non-

6

      privileged documents on a rolling basis, with production completed by May 15, 2020. The document production will be conducted consistent with the requirements of Fed R. Civ. P. 26 and 34.

4. Plaintiff shall file its memorandum of law in support of its motion for preliminary injunction on or before June 1, 2020, and shall be limited to 20 pages.

5. Defendants' responsive memorandum of law shall be filed on or before June 18, 2020, and shall be limited to 20 pages.

6. Plaintiff's reply in support of its motion for a preliminary injunction shall be filed on or before June 25, 2020, and shall be limited to 15 pages.

7. Defendants' response to the first amended complaint will be due 14 days after the ruling on the preliminary injunction, in accordance with the Court's February 7, 2020, minute entry.

Plaintiff understands that Defendants are in agreement with this schedule, with two exceptions: First, Defendants object to the sentence in paragraph 3 that "[t]he document production will be conducted consistent with the requirements of Fed R. Civ. P. 26 and 34." Plaintiff believes the obligations of the Rules apply to discovery, and it is concerning that Defendants are already refusing to adhere to these established standards.

Second, Plaintiff requests a deadline of June 1 to file its brief, whereas Defendants insist on a May 28 deadline. A June 1 deadline is proper because it will give Plaintiff 17 days after the document production deadline (May 15) and will also give Defendants an equal time of 17 days to file their opposition on June 18. Plaintiff will be seeing Defendants' documents for the first time, whereas Defendants are presumably already aware of the substance of those documents. It is only fair that the briefing schedule be split evenly and not in a way that gives Defendants more time to respond than Plaintiff will have to prepare.

Ironically, Defendants now contend that they require more time for their opposition brief, even though they are the ones who insisted on an unnecessarily shortened schedule. They also continue to incorrectly claim that the parties agreed to a schedule previously. Regardless, all

their arguments for more time equally support DISH's request that each side have an equal 17 days. They have known for months that they would need to file an opposition; they actually have access to their documents (which DISH will not have until May 15); they are seeking to deny DISH the use of an extra weekend to prepare its brief; and they consented to the extension of the TRO and extended briefing schedules on the remand motion and the motion to amend the complaint, which belies their newfound insistence on rushing to a conclusion. Furthermore, Defendants have promised to make a substantial document production by May 15, yet they would give DISH only 13 days to review the documents, while simultaneously preparing to file a fact-intensive brief on May 28. This is unreasonable.

## II.   The Terrier Media Defendants' Position[2]

The parties previously brought their disagreement about the scope of discovery to this Court in their joint status report submitted on April 24, 2020. (Dkt. 81.) The Court settled that dispute on April 29, 2020, entering an order requiring the parties "to conduct expedited written discovery limited to documents and communications (including letters, emails, text messages, and other message platforms) related to the sequencing and closing of the transactions whereby Apollo and its affiliates acquired the Cox stations and the Northwest stations on or around December 17, 2019," and directing the parties to submit a status report with "deadlines for document production and a proposed briefing schedule." (Dkt. 83.) DISH is now using this second status report as an opportunity to re-litigate the scope of document production ordered by the Court, without bothering to engage with the Terrier Media Defendants on the specifics of

---

[2] Defendant Cox Media Group LLC joins the Terrier Media Defendants' position on the proposed deadlines for document production and proposed briefing schedule. Counsel for Cox Media Group LLC will meet and confer with counsel for DISH on proportional, nonduplicative expedited discovery as limited under the April 29 order.

how to operationalize a search and review for responsive documents under the expedited time constraints that follow from DISH's desire to seek a preliminary injunction. DISH also quibbles regarding references to Rules 26 and 34, and on the deadline for its opening preliminary injunction brief. Each of these issues is addressed in turn.

    A.    **Document Production**

          1.    **The Terrier Media Defendants' Plan.**

Since receiving the Court's April 29 order, the Terrier Media Defendants and their counsel have worked quickly and diligently to develop an actionable plan to search for and identify documents responsive to the Court's order. Based on those efforts, the Terrier Media Defendants proposed to DISH that they would search for, review, and produce the following:

    i.    The closing binder, which includes approximately 250 documents from the closings of the transactions on December 17, 2019;

    ii.    Documents sufficient to show the exchange of signature pages in escrow prior to the closings;

    iii.    Documents sufficient to show the sequencing of the transactions;

    iv.    Documents sufficient to show the planned flow of funds for the transactions;

    v.    Documents sufficient to show the actual flow of funds for the transactions;

    vi.    Documents sufficient to show the existence and role of NBI Holdings, LLC prior to the transactions at issue; and

    vii.    Responsive, non-privileged letters, emails, text messages, or other electronic messages, based on a review of approximately 3,700 de-duped and threaded documents (i) to/from/cc/bcc Aaron Sobel, Houston McCurry, and Nathan Boyarsky (the three Apollo-affiliated individuals identified after reasonable inquiry as most likely to have responsive materials), (ii) sent or received on December 16 or 17, 2019, and (iii) that hit on the following search terms: cox OR camelot OR northwest OR terrier OR close OR closed OR closing* OR wire* OR flow* OR releas* OR sequenc* OR "fed ref*" OR "federal reference".

This is a reasonable and proportional proposal to respond to the Court's order to produce documents and communications "related to the sequencing and closing of the transactions . . . on

9

or around December 17, 2019"—particularly since the production is to be completed in two weeks, the collection and review must be done despite COVID-19-related restrictions, and the production is for a preliminary injunction after which the parties will engage in full discovery. Indeed, the Terrier Media Defendants expect that it will require several hundred hours to complete the collection, review, and production of these materials, and therefore have already begun collecting and reviewing documents so that they are in a positon to begin rolling productions this week and to complete production by next Friday.

DISH complains that this plan is insufficient, but seeks only broad and limitless discovery more appropriate for a months-long discovery plan in connection with a ruling on the merits than for an expedited preliminary injunction schedule that is necessary to bring to an end an unprecedentedly long TRO. DISH offers no concrete, let alone constructive, suggestions on what changes the Terrier Media Defendants should make to their search and review plan. It says only that limiting the preliminary ESI review to December 16–17, 2019, is "deficient on its face," but does not explain why a broader time period is necessary to address the Court's April 29 order, or why a broader period—almost certainly adding tens, if not hundreds, of thousands of more documents for review—would be reasonable under the circumstances. DISH does not even propose a specific alternative date range, merely suggesting vaguely that the review should go back to at least February 2019 when the purchase agreements were executed.[3]

---

[3] DISH takes issue with the Terrier Media Defendants' use of the phrase "Documents sufficient to show," claiming that the Terrier Media Defendants intend to "cherry-pick" only documents favorable to their position. Not so. This phrase is merely a reference to the fact that, in addition to the universe of electronic documents the Terrier Media Defendants are agreeing to review and produce in item (vii) of their plan—whether or not favorable to their position—the Terrier Media Defendants are *also* agreeing to specifically search for documents that address particular aspects of the issues identified in the Court's April 29 order. This is standard discovery practice, and indeed DISH's own letter requests used the same "sufficient to show" framing. (*See* Dkt. 81-1 at 7.)

**2.     DISH's Demands.**

Instead of engaging in the specifics of search methodology, DISH demands that the Terrier Media Defendants produce eight categories of documents, apparently without a date limitation. DISH's failure to impose any meaningful limits on its requests reinforces that it is not a serious proposal for a preliminary injunction stage of proceedings. The Court should reject DISH's demands for three reasons.

*First*, DISH is simply asking this Court to expand its order to include materials DISH previously requested and this Court denied. The Court's April 29 minute entry specified the scope of discovery, based on *part* of *one* of DISH's eight April 21 letter requests. (*Compare* Dkt. 83 (ordering "expedited written discovery *limited to* documents and communications (including letters, emails, text messages, and other message platforms) related to the sequencing and closing of the transactions whereby Apollo and its affiliates acquired the Cox stations and the Northwest stations on or around December 17, 2019" (emphasis added)) *with* Dkt. 81-1 at 7 (Request 1: "documents and communications (including payment receipts, letters, emails, text messages, and other messaging platforms) related to the structure, sequencing, and/or closing of the transactions whereby Apollo and its affiliates acquired the Cox stations and the Northwest stations on or around December 17, 2019, including, but not limited to, documents and communications that demonstrate the precise timing of the closing of each of these transactions.").)

Not content with what the Court granted it, DISH has proposed eight additional document requests. Substantial portions of these requests simply repeat or repackage requests from DISH's April 21 letter despite the Court's April 29 ruling. (*E.g., compare supra* at 4 (Request 1: "Offering memo and any other documents provided to potential investors") *with* Dkt. 81-1 at 7 (Request 2: "The offering memoranda or similar documents provided to actual or potential investors").) Indeed, DISH effectively *admits* that it is asking the Court to revisit the April 29

11

ruling, saying that it believes "discovery should extend to *additional* documents that Plaintiff has requested" because those "additional documents" are "obviously relevant to the question that the Court allowed discovery on." (*Supra* at 2 (emphasis added).) Yet DISH has offered no basis for this Court to reconsider its ruling.

*Second*, DISH's high-level document requests are unproductive, unrealistic, and unnecessary at this stage. They are *unproductive* because DISH offers no specific, actionable suggestions for how it thinks the Terrier Media Defendants should actually search for responsive documents. They are *unrealistic* in that they demand collecting, reviewing, and producing nearly a year's worth of documents from an unspecified number of individuals spread out across the country (including many in New York) during an unprecedented public health crisis. These requests would be overbroad and disproportionate under any circumstances, and are particularly so for expedited preliminary injunction discovery during a pandemic. And DISH's requests are *unnecessary* because the Terrier Media Defendants' proposed search methodology is likely to produce responsive documents that will address the "sequencing and closing of the transactions," as the Court directed (Dkt. 83), *as well as DISH's requests*. For example: the proposed search methodology is likely to identify and lead to the production of emails relating to the closing conditions, the funding, and the timing of the closings; the closing materials are likely to include a checklist if there was such a non-privileged document; the documents specifying and implementing the sequencing will address the entities that acquired and owned the Cox stations after the closings; and the documents evidencing the funding will address the funding. (*Compare* DISH requests 1–7.)

*Finally*, DISH's attempt to jam the Terrier Media Defendants on expedited discovery for the preliminary injunction is inequitable. DISH had *three months* to pursue discovery for its

preliminary injunction request, yet sat on its hands.[4] Its current demands that the Terrier Media Defendants fit the equivalent of full-blown merits discovery into a two-week period is inequitable and should be rejected, particularly given the entirely one-sided nature of DISH's fishing expedition.

### B. Rule 26 and Rule 34

DISH claims that the Terrier Media Defendants are attempting to "extricate themselves from the federal rules that govern all discovery, no matter how extensive or limited" by removing the sentence, "The document production will be conducted consistent with the requirements of Fed R. Civ. P. 26 and 34." This is a baseless distraction.

First and foremost, the Terrier Media Defendants are not attempting to evade any substantive federal discovery law. Nor could they. Substantive federal discovery law governs the Terrier Media Defendants' (and DISH's) production regardless of whether Rule 26 and Rule 34 are specifically referenced in a joint status report. And of course the Terrier Media Defendants will comply with all aspects of substantive federal discovery law.

Second, DISH is attempting to manufacture a dispute over a technicality relating to the *processes* set out in Rule 26 and Rule 34. The Terrier Media Defendants deleted the proposed references to Rule 26 and Rule 34—which DISH added only to the third draft of the status report—because those Rules impose *procedural* requirements that should not apply to expedited preliminary injunction discovery, including, in particular, requirements regarding the exchange of discovery requests, written responses and objections to those requests, and a privilege log. *See, e.g.*, Fed. R. Civ. P. 34(b)(1)–(2). The parties had agreed that, under the circumstances,

---

[4] DISH claims that it requested discovery in January and February. (*Supra* at 6.) This is nonsense. DISH did not request a Rule 26(f) conference until the evening of April 29—the same day the Court entered its order on the scope of preliminary injunction discovery. Defendants sent DISH their proposed search methodology shortly thereafter.

13

written requests and responses and objections were not necessary at this time, but had reserved all rights regarding them. Further, when deleting the references to Rule 26 and Rule 34, counsel for the Terrier Media Defendants told DISH's counsel that the reason for deletion was that the expedited preliminary injunction discovery was "not proceeding in the process outlined by Rule 26 and Rule 34," and specifically offered to address any procedural concerns that DISH had. DISH's counsel failed to identify anything in response.

### C. Briefing Schedule

The Court should enter a preliminary injunction briefing schedule that requires DISH to file its opening brief on May 28, so that the Terrier Media Defendants have three weeks to respond.

When the parties first discussed a briefing schedule for the preliminary injunction motion, the Terrier Media Defendants proposed 30 days for their opposition brief. They then compromised on 21 days, believing that three weeks is the minimum amount of time reasonably necessary to review DISH's opening submission (including any evidence DISH submits), coordinate with the many defendants that DISH has sued, and prepare an adequate response that all clients have a meaningful opportunity to review and sign off on. DISH now insists that the Terrier Media Defendants have only 17 days for their response, suggesting that they should not get any longer than the number of days between the final document production deadline and the deadline for DISH's opening brief. DISH's insistence on equal 17-day intervals ignores the reality that DISH has known since January that it would be required to submit an opening brief. It has known since April 10 that it would need to file that brief in this Court. It has already received relevant materials through pre-litigation disclosures, and it will receive much of the Terrier Media Defendants' production on a rolling basis well before the May 15 deadline. DISH does not need 17 days to review the last production and revise its brief with citations to any

14

documents it intends to cite. The additional four days—including a weekend—that the Terrier Media Defendants seek here will make a meaningful difference to the schedule for reviewing DISH's opening submission and coordinating with the numerous defendants. Those four days can come out of DISH's time for its opening brief, or its reply brief, or a combination of the two. But there is no reason the Terrier Media Defendants' time should be constrained in light of DISH's failure to act promptly, and its strategic decision to rest on its TRO for as long as the Court was willing to allow.

Accordingly, the Terrier Media Defendants request that the Court enter the following schedule (which has the same dates as DISH's proposal except for the deadline for DISH's opening brief in paragraph 4):

1. Plaintiff will file its Motion for a Preliminary Injunction forthwith. Plaintiff shall file its supporting materials and Defendants shall file their opposition materials on the schedule set forth below.

2. The parties shall file a proposed protective order governing the treatment of confidential information on or before May 12, 2020. The parties will treat all materials produced prior to May 12, 2020 as governed by the terms of the protective order, when entered.

3. The parties shall undertake a reasonable search and review for documents addressed in the Court's April 29, 2020, minute entry, and shall produce responsive, non-

        privileged documents on a rolling basis, with production completed by May 15, 2020.

4. Plaintiff shall file its memorandum of law in support of its motion for preliminary injunction on or before May 28, 2020, and shall be limited to 20 pages.

5. Defendants' responsive memorandum of law shall be filed on or before June 18, 2020, and shall be limited to 20 pages.

6. Plaintiff's reply in support of its motion for a preliminary injunction shall be filed on or before June 25, 2020, and shall be limited to 15 pages.

7. Defendants' response to the first amended complaint will be due 14 days after the ruling on the preliminary injunction, in accordance with the Court's February 7, 2020, minute entry.

Dated: May 4, 2020                         Respectfully submitted,

                                                /s/ *Jared R. Butcher*

Pantelis Michalopoulos (*pro hac vice*)
Michael Dockterman (ARDC #: 3121675)
Jared R. Butcher (*pro hac vice*)
STEPTOE & JOHNSON LLP (Firm ID: 43315)
227 West Monroe, Suite 4700
Chicago, Illinois 60606
Telephone: (312) 577-1243
Fax: (312) 577-1370
- and -
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 429-3000

*Attorneys for Plaintiff DISH Network L.L.C.*

/s/ *Hille R. Sheppard*

Scott Lassar (No. 1586270)
Bruce R. Braun (No. 6206628)
Hille R. Sheppard (No. 6226077)
John M. Skakun III (No. 6297636)
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Telephone: (312) 853-7000

16

Facsimile: (312) 853-7036
slassar@sidley.com
bbraun@sidley.com
hsheppard@sidley.com
jskakun@sidley.com

*Counsel for the Terrier Media Defendants*

*/s/ Brian O'Connor Watson*

Patricia Brown Holmes
Joshua D. Lee
Brian O'Connor Watson
Allison N. Siebeneck
RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison Street, Suite 2900
Chicago, IL 60602
(312) 471-8700
pholmes@rshc-law.com
jlee@rshc-law.com
bwatson@rshc-law.com
asiebeneck@rshc-law.com

*Counsel for Defendant Cox Media Group LLC*

## **CERTIFICATE OF SERVICE**

     I hereby certify that on May 4, 2020, I caused the foregoing to be electronically filed using the CM/ECF system, which will send notice of this filing to all counsel of record.

                                              */s/ Hille R. Sheppard*
                                              Hille R. Sheppard (No. 6226077)
                                              SIDLEY AUSTIN LLP
                                              One South Dearborn
                                              Chicago, IL 60603
                                              (312) 853-7000
                                              hsheppard@sidley.com

                                              *Counsel for the Terrier Media Defendants*