**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DISH NETWORK L.L.C., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:20-CV-00570 |
| | ) | Hon. Thomas M. Durkin |
| | ) | |
| COX MEDIA GROUP, LLC et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MOTION TO COMPEL DISCOVERY**

Plaintiff DISH Network L.L.C. respectfully moves under Fed. R. Civ. P. 37 and Local Rule

37.2 for an Order compelling Defendants Terrier Media Buyer, Inc. d/b/a Cox Media Group, NBI

Holdings, LLC, Bryson Broadcast Holdings, LLC, Northwest Broadcasting, L.P., Northwest

Broadcasting, Inc. ("Northwest"), Camelot Media Buyer, Inc., Camelot Media Holdings, LLC,

Apollo Global Management, Inc., AP IX (PMC) VoteCo, LLC, and AP IX Titan Holdings GP,

LLC (collectively the "Terrier Defendants"), and Cox Media Group, LLC ("Cox" and collectively

with the Terrier Defendants, "Defendants") to produce documents pursuant to the Court's April

29, 2020 (Dkt. 83) and May 6, 2020 Orders (Dkt. 90).  In Support of this Motion, DISH states as

follows:

**INTRODUCTION AND SUMMARY**

1.      On May 6, 2020, the Court ordered Defendants to produce seven categories of

materials on an expedited basis, Dkt. 90 at 2, including documents and communications related to

the sequencing of the transactions involving the acquisitions of the Cox stations and the Northwest

stations for the period of January through December 2019.  The Defendants have refused to

produce documents in that category that are dated before December 2019. In contrast with another category of documents, for which the Court imposed a time limitation of December 2019, the Court imposed no such limit for sequencing documents.

2.  There is good reason for the lack of such a time limit in the Court's May 6 Order. These acquisitions were negotiated in early 2019, culminating in agreements reached by Apollo portfolio companies with Northwest and Cox in February 2019, and Defendants assert that they always planned to buy the Northwest stations before the Cox stations.

3.  The limited documents that Defendants have produced under other document categories confirm and indeed heighten the relevance of these pre-December 2019 sequencing documents. We know now that the main objective of the Apollo Defendants in acquiring the two groups was to achieve an immediate retransmission price increase by swapping the lower rates of one group with the higher rates of the other. Dkt. 95 at 5-6. We know that they planned to achieve this by creating the perception that Cox was being acquired, not by Apollo, but by Northwest. *Id.* at 6. And we know that contriving the sequence of the transactions to boost that perception was essential to Defendants. *Id.*

4.  In these circumstances, the scope of the Court's discovery orders is proven to be eminently reasonable and indeed necessary to evaluate Defendants' actions, and Defendants' failure to comply with the orders is especially prejudicial. For Cox, which has firmly refused to produce any pre-December sequencing documents, the prejudice to DISH is compounded even further. The documents produced by Apollo so far show a deepening rift and tension between Apollo and Northwest, on the one hand, and Cox, on the other. Dkt. 95 at 14. That tension may be due to Cox's discomfort over Apollo's and Northwest's effort to create a perception that is manifestly divorced from reality. Cox's understanding of the planned closing sequence, and its

views about the true nature of the transaction and the disconnect between that sequence and that true nature, are therefore important. Such views are likely to be found in pre-2019 Cox documents about sequencing.

## DISCUSSION

5.      Defendants' initial productions consisted of 169 documents from Cox and 1,296 from Terrier Defendants. Counsel for DISH reviewed these documents and identified several categories where additional documents obviously exist but were not produced. In an effort to resolve these issues, counsel for DISH met and conferred with counsel for Terrier Defendants and with counsel for Cox. Specifically, counsel for DISH had telephonic conferences with counsel for Terrier Defendants on May 8 and 20, and with counsel for Cox on May 8 and 21. Counsel have also exchanged many emails in an effort to narrow the scope of the dispute.

6.      Although Cox and Terrier Defendants have each made one supplemental production as a result of these negotiations (5 documents from Cox and 71 from Terrier Defendants), they continue to refuse to search for responsive documents and communications related to the sequencing of the transactions for the period of January through November 2019. On May 29, DISH informed Defendants that it would file this Motion.

7.      "District courts enjoy extremely broad discretion in controlling discovery.*" In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 336 (N.D. Ill. 2005). "In the context of preliminary injunction proceedings, courts in the Seventh Circuit will consider a request for expedited discovery 'on the entirety of the record to date and the reasonableness of the request in light of all the surrounding circumstances.'" *Restoration Hardware, Inc. v. Haynes Furniture Co.*, No. 16 CV 10665, 2017 WL 3597518, at *2 (N.D. Ill. Mar. 13, 2017) (citing *Ibarra v. City of Chicago*, 816 F. Supp. 2d 541, 554 (N.D. Ill. 2011)). Here, because the Court has ordered expedited

discovery on the topic of the sequencing of the transactions, Defendants carry a "'heavy' burden of persuasion" in seeking to limit such discovery. *Kleen Prod. LLC v. Packaging Corp. of Am.*, 10-cv-5711, 2012 WL 4498465, *13 (N.D. Ill. Sept. 28, 2012).

8.      Sequencing documents and communications are within the scope of the Court's May 6 Order, which requires Defendants to produce "Documents sufficient to show the sequencing of the transactions." (Dkt. 90 at 2 (category iii).) The Court defined "sufficient to show" as "all documents related to the above outlined topics (not just those dated December 16, 2020 or December 17, 2020) unless privileged or unduly burdensome to produce." The Court did not impose a date limit on this category, in contrast with category (vii), which is the only category limited to any time period, and for this category alone the time period is December 2019.

9.      There is no doubt that documents and communications related to sequencing exist for most, if not all, of 2019. For example, documents produced thus far include an email chain from December 2019 discussing how Defendants conducted and exchanged due diligence on the applicability of the after-acquired station clause in the Northwest retransmission agreement, but relevant due diligence documents were not produced because the due diligence documents apparently were exchanged before December 2019. Although Defendants contend that they achieved the result they wanted in December—*i.e.* sequencing the transaction in a way that triggered the after-acquired station clause—they are refusing to show their work.

10.      The sequence of the two transactions—and the potential triggering of the change-in-station-control / after-acquired station clause—were issues much earlier in 2019. From the beginning, the Defendants explained to investors that the acquisitions were attractive because they allowed an immediate increase in retransmission revenues by replacing the rates of one group with

those of another. Dkt. 95 at 6. To do this, the Defendants sought to disseminate the incorrect "narrative" that Cox was being acquired by Northwest. *Id.* at 6—were issues much earlier in 2019.

11.     These are strategies that were obviously hatched and debated before December 2019. In February 2019, Defendants executed the Northwest and Cox purchase agreements, which contemplate sequenced closings, and in March 2019, Defendants submitted an application to the FCC in which they referred to the transactions closing in close succession. Defendants themselves emphasized these points in their pleadings in this action; for example, their opposition to DISH's motion to remand contains a 2-page discussion of the sequencing of the transactions and states that "[t]he parties to the Northwest and Cox Purchase Agreements thus made clear to the FCC – and the public generally – that the two transactions would proceed sequentially …." Dkt. 47 at 5.

12.     Given the importance of sequencing from the earliest stages of the Cox and Northwest acquisitions, it is inevitable that Defendants exchanged communications throughout 2019 in which they discussed the sequencing of the transactions. Indeed, Defendants have not denied the existence of pre-December documents and communications related to sequencing; they have merely contended that these materials are not within the scope of category (iii) of the Court's May 6 order.

13.     The sequencing documents and communications are critical to DISH's motion for a preliminary injunction—specifically to the issues of the application of DISH's retransmission agreement with Cox and Defendants' intent to interfere with that agreement. These are fact-intensive issues and all the relevant facts are important, not just the facts that Defendants are willing to reveal at this stage. Notably, Defendants have not produced sufficient documents to confirm the sequence that they claim was followed at closing; in fact, counsel for Terrier

Defendants confirmed that closing was conducted via phone, and apparently, there are no minutes or other records of that call.

14.     Furthermore, production of the pre-December sequencing materials may reveal credibility issues with Defendants' current posture.  It may show doubts about the ability of Apollo—a private equity group with no prior broadcasting experience and no prior retransmission agreement with DISH—to avail itself of a clause meant to facilitate the transfer of stations between existing broadcasters.  Perhaps Defendants abandoned certain steps in the sequence that they deemed essential at one point or another.  Or perhaps Defendants engaged in frank discussions of their intent to sequence the transactions—not for legitimate purposes—but instead to terminate the Cox agreement and deprive DISH of its rights even as Cox was negotiating the transactions.  Or the documents could show how Defendants recognized that they were committed to a "concurrent" transaction that they had to dress in other clothing to support their "after-acquired" position.  Or the documents could show that Cox disagreed that Apollo's strategies should be undertaken or would succeed.  This last possibility is buttressed by the discovery of tensions between Cox and the Apollo/Northwest camp.  *See* Dkt. 95 at 14.  It is reasonable to infer these tensions may have been ignited by the gimmick that was all-important to the two transactions' economics—the perception of a particular closing sequence. Of course, these examples are illustrative, not exhaustive; there are many other ways in which Defendants' pre-December documents and communications could easily be related to the sequencing of the transactions.

15.     DISH has made every effort to eliminate any undue burden to Defendants, consistent with the Court's May 6 Order.  To that end, counsel for DISH emailed counsel for Defendants during the meet-and-confer process and suggested a narrow set of searches to identify

sequencing documents and communications. Those searches for the period January – December 2019 for Terrier Defendants are as follows:

     a. Documents and communications exchanged between Apollo personnel, on the one hand, and either Brian Brady (CEO of Northwest) or Kim Guthrie (CEO of Cox), on the other hand;

     b. Documents and communications that refer to either "Northwest" or "NBI" and that contain the term "after-acquired"; and

     c. Due diligence exchanged between the Defendants that refers to either "Northwest" or "NBI" and that contains the term "after-acquired."

16. DISH is willing to work with the Terrier Defendants to further narrow the searches if the results were burdensome, which DISH firmly believes they are not, but Terrier Defendants have refused even to run these searches or otherwise generate hit results to describe any burden the searches would impose.

17. Similarly, Cox should search for the following documents and communications for the period of January – December 2019:

     a. (Northwest OR NBI OR Camelot OR Apollo) AND (sequenc* OR after-acquired)

18. This search is also unlikely to impose any undue burden. Cox already ran this search for December 2019 and only produced five additional documents as a result. Extrapolating that result over another eleven months seems highly unlikely to be burdensome. Moreover, the five documents from December 2019 are the only documents not included in the closing binder that Cox has produced; the remaining 169 are Cox's copy of the closing binder. Having produced

only a binder and five emails, Cox is hardly in a position to complain about having to search for additional sequencing documents and communications.

WHEREFORE, DISH respectfully requests that this Court enter an Order:

(a) compelling Defendants to produce sequencing documents and communications for the period of January - December 2019 within seven days; and

(b) granting such further relief as the Court deems proper and just.

A proposed order will be submitted herewith.

Dated: June 1, 2020                                              Respectfully submitted,

                                                                 /s/ *Jared R. Butcher*
                                                                 Pantelis Michalopoulos (*pro hac vice*)
                                                                 Michael Dockterman (ARDC #: 3121675)
                                                                 Jared R. Butcher (*pro hac vice*)
                                                                 STEPTOE & JOHNSON LLP (Firm ID: 43315)
                                                                 227 West Monroe, Suite 4700
                                                                 Chicago, Illinois 60606
                                                                 Telephone:  (312) 577-1243
                                                                 Fax:  (312) 577-1370

                                                                 - and -

                                                                 1330 Connecticut Avenue, N.W.
                                                                 Washington, D.C.  20036
                                                                 Telephone:  (202) 429-3000

                                                                 *Attorneys for Plaintiff DISH Network L.L.C.*

8

9

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 1s day of June 2020, a true and accurate copy of Plaintiff DISH Network L.L.C.'s Motion to Compel Discovery was served electronically using the Court's CM/ECF system to all counsel of record and parties receiving electronic notice of pleadings filed in this case.

/s/ *Jared R. Butcher*

Jared R. Butcher