**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DISH NETWORK L.L.C., | |
| Plaintiff, | |
| v. | Case No. 1:20-cv-00570 |
| COX MEDIA GROUP, LLC, et al., | Hon. Thomas M. Durkin |
| Defendants. | |

**THE TERRIER MEDIA DEFENDANTS' OPPOSITION TO
<u>DISH'S MOTION TO COMPEL DISCOVERY</u>**

Scott Lassar (No. 1586270)
Bruce R. Braun (No. 6206628)
Hille R. Sheppard (No. 6226077)
John M. Skakun III (No. 6297636)
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036
slassar@sidley.com
bbraun@sidley.com
hsheppard@sidley.com
jskakun@sidley.com

*Counsel for the Terrier Media Defendants*

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

BACKGROUND .................................................................................................................... 3

ARGUMENT .......................................................................................................................... 7

I. The Terrier Media Defendants Complied With The Court's May 6 Order, And DISH Is Now Seeking Discovery Beyond That Order. .................................. 7

    A. The Terrier Media Defendants Complied With Category (iii). ....................... 7

    B. DISH's Requests Go Beyond The Court's Order. ........................................... 8

II. DISH Has Failed To Justify The Additional Expedited Discovery It Seeks. ...................... 10

III. Producing This Additional Discovery On An Expedited Basis While Preliminary Injunction Briefing Is Underway Would Be Unduly Burdensome. .................. 12

CONCLUSION ..................................................................................................................... 15

**INTRODUCTION**

DISH's Motion to Compel is an 11th-hour fishing expedition that highlights the insufficiency of DISH's evidence in support of its motion for a preliminary injunction. The evidence refutes the theory of liability behind the TRO DISH obtained in state court. So DISH now requests a new set of documents and communications that it did not previously ask this Court for, and seeks a vague and unspecified adverse inference. (*See* Dkt. 95, DISH PI Br. at 2 (seeking adverse inference that unproduced documents "would not be favorable to" Defendants without describing what that inference would be).) The Motion to Compel should be denied for three reasons.

*First*, the Terrier Media Defendants fully complied with the Court's May 6 order specifying the documents to be produced on an expedited basis by May 15, and DISH's new requests have no foundation in that order. DISH grounds its Motion in "Category (iii)," which required the production of "[d]ocuments sufficient to show the sequencing of the transactions" (Dkt. 90, 5/6/20 Order at 2). (*See* Dkt. 98, Motion ¶ 8.) The Terrier Media Defendants did this. After a reasonable investigation through discussions with multiple knowledgeable persons, the Terrier Media Defendants produced, among other things: slide decks showing every step of the transactions; the purchase agreements, ancillary agreements, and corporate documents that prescribed and carried out the transaction steps; and FCC filings and rulings that described and approved the structure and sequencing of the transactions.

DISH *does not dispute* that the documents produced by the Terrier Media Defendants fully show the contractually specified and FCC-approved sequencing of the transactions. Instead, DISH now claims that Category (iii) requires more. Specifically, DISH now wants the Terrier Media Defendants to collect and review electronically stored information ("ESI"), *e.g.*, emails, for the entire year-long period of January through December 2019, and produce:

1

>   (1) documents and communications exchanged between (a) any "Apollo personnel" (not just the three Apollo individuals previously agreed) and (b) either Brian Brady (CEO of Northwest prior to the closing) or Kim Guthrie (CEO of Cox Media Group, LLC prior to the closing);
>
>   (2) documents and communications—presumably also from any "Apollo personnel" but without any limit on counterparties—that refer to either "Northwest" or "NBI" and that contain the term "after-acquired"; and
>
>   (3) due diligence documents exchanged between the Defendants that refer to either "Northwest" or "NBI" and that contain the term "after-acquired."

(Dkt. 98, Motion ¶ 15.) Contrary to DISH's suggestion, none of these requests is targeted at "the sequencing of the transactions." And Request (1) contains no topic limitation at all. Further, the Court specifically addressed the review of ESI in Category (vii) of the May 6 order, and defined the parameters of that review, including the custodians, date range, and search terms. DISH should not be allowed to transform Category (iii) into a *sub silentio* requirement for a second, far broader ESI review.

   *Second*, DISH has failed to justify these new requests at the preliminary injunction stage. The Motion does not state good cause requiring that these documents be produced on an expedited basis, particularly in light of the discovery DISH has already received. Indeed, DISH's delay demonstrates that there is no good reason for these new requests. DISH did not seek these documents in the April 24 or May 4 joint status reports, despite having had more than three months since the entry of the TRO to determine what "expedited" discovery it needed. (Dkt. 81, 4/24/20 Joint Status Report; Dkt. 88, 5/4/20 Joint Status Report.) Nor did it request additional ESI searches during the Court-ordered modified Rule 26(f) conference on May 8. Not until *May 26* did DISH first send these three new ESI requests to the Terrier Media Defendants—*eleven days* after the Court-ordered expedited-production deadline of May 15, and after the Terrier Media Defendants had conducted multiple additional searches and produced additional documents in response to other discovery demands DISH made on May 11 and May 19.

*Third*, the requests' breadth and timing renders them unduly burdensome. The Terrier Media Defendants reviewed more than 10,000 documents based on the ESI search in Category (vii) of the May 6 order. That ESI search covered only one month, specified only three individuals' documents, and used narrower search terms than DISH now demands. DISH's new requests, which cover a 12-month period and are not limited by custodian, would require the review of tens of thousands of documents. The burden imposed by allowing such a fishing expedition is not justified at this time, especially because the information DISH seeks will not aid this Court in resolving DISH's motion for a preliminary injunction.

The Court should deny DISH's Motion to Compel.

## BACKGROUND

This case is fundamentally a contract dispute over the application of the Northwest Retransmission Consent Agreement to the acquisitions of the legacy Northwest and Cox local TV broadcast stations. The Terrier Media Defendants contend that an unambiguous provision in that Agreement covering "after-acquired stations"—*i.e.*, stations that Northwest or any of its direct or indirect affiliates end up owning after the effective date of that Agreement—applies to the legacy Cox stations, and therefore that those stations are now governed by the Northwest Retransmission Consent Agreement rather than the Cox Retransmission Consent Agreement. DISH contends that this "after-acquired" provision was not triggered. DISH obtained a TRO on January 15 based on that theory, which remains the heart of its complaint. But more recently, DISH has been in search of a fallback theory and now focuses on arguing that Defendants committed a tort when they executed the transactions—even though those transactions were publicly disclosed and approved by federal regulators, and complied with the plain language of the Retransmission Consent Agreements. This discovery dispute reflects how DISH's legal theories have become a moving target.

3

DISH first outlined its proposal for expedited discovery in the April 24 joint status report, some three months after it obtained "temporary" relief from the state court. (Dkt. 81, 4/24/20 Joint Status Report.) DISH's eight document requests were reflected in the exhibit to the status report. (Dkt. 81-1, Exhibit 1 at 7.) DISH proposed no ESI search terms or custodians, and did not target any specific non-custodial data sources. It also did not ask the Court to order discovery on analysis or "due diligence" about the "after-acquired" clause. (*See* Dkt. 81, 4/24/20 Joint Status Report at 2–13; Dkt. 81-1, Exhibit 1 at 7.)

On April 29, the Court entered an order setting the scope of expedited discovery. Modifying the first of DISH's eight document requests, the Court granted "expedited written discovery limited to documents and communications (including letters, emails, text messages, and other message platforms) related to the sequencing and closing of the transactions whereby Apollo and its affiliates acquired the Cox stations and the Northwest stations on or around December 17, 2019." (Dkt. 83, 4/29/20 Order; *compare* Dkt. 81-1, Exhibit 1 at 7 (DISH's first request).) The Court did not order discovery on DISH's other requests, and directed that another joint status report be filed by May 4. (Dkt. 83, 4/29/20 Order.)

In the May 4 joint status report, DISH and the Terrier Media Defendants disputed how to accomplish production of the discovery ordered by the Court. DISH again declined to engage in the practical details of document review and production: it proposed no specific search methodology for ESI—no search terms, no custodians, no date range—and no non-custodial data sources. It instead made the strategic choice to continue relying only on generally worded document requests. (*See* Dkt. 88, 5/4/20 Joint Status Report at 4–5.) The Terrier Media Defendants, in contrast, proposed a search methodology for ESI including specific search terms, three individuals, and the two-day period of December 16–17, 2019. (*See id.* at 9.) They also

4

proposed several non-ESI, non-custodial categories of documents to search for and produce, including: the entire closing binder (approximately 250 documents from the closings); documents sufficient to show the exchange of signature pages in escrow prior to the closings; documents sufficient to show the sequencing of the transactions; documents sufficient to show the planned and actual flow of funds; and documents sufficient to show the existence and role of NBI Holdings, LLC prior to the transactions. (*See id.*)

On May 6, the Court entered an order addressing document production and the preliminary injunction schedule. (Dkt. 90, 5/6/20 Order.) The Court found the Terrier Media Defendants' proposed production plan sufficient, with the exception of expanding the date range for the Category (vii) ESI review to December 1–31, and clarifying that, for the non-ESI Categories, "[s]ufficient to show" means "all documents related to" those categories and "not just those dated December 16[] or December 17, 20[19,] unless privileged or unduly burdensome to produce." (*Id.* at 2.) The Court also ordered that a modified Rule 26(f) conference be conducted by May 8 to "resolve any outstanding disputes about which documents must be produced as part of expedited discovery," and that the expedited productions be completed by May 15. (*Id.* at 1.)

The Terrier Media Defendants and DISH held the modified Rule 26(f) conference by telephone on May 8, after exchanging detailed correspondence the day before. After the conference, the Terrier Media Defendants sent an email memorializing the discussion and describing with particularity the documents they intended to produce for each non-ESI Category in the May 6 order. (Ex. A, 5/10/20 Email.) As to Category (iii) concerning sequencing, the email confirmed that the Terrier Media Defendants would produce slide "decks by PwC and Paul Weiss that describe the transaction steps and their sequencing," as well as "other documents

5

[that] address the sequencing," which included the corporate documents and transaction step implementation agreements from the closing binder, among others. (*Id.*)

Importantly for this Motion, the Terrier Media Defendants' May 10 email also confirmed that they were *not* "conducting any ESI review beyond that addressed in [C]ategory (vii)" of the May 6 order. (*Id.*) The next day, DISH's counsel responded to the email but *did not object* to the Terrier Media Defendants' statement that they would not conduct ESI searches to identify Category (iii) sequencing documents. (Ex. B, 5/11/20 Email.) That same day, DISH and the Terrier Media Defendants filed a joint status report informing the Court that there were no outstanding disputes, and that they had agreed to narrow the ESI search in Category (vii) because the original parameters had resulted in too many hits to be reasonably reviewed under the circumstances. (Dkt. 92, 5/11/20 Joint Status Report.)

DISH nonetheless continued to request additional documents in the following weeks, including on May 11 and May 19. Taking to heart the Court's admonition to "not quibble over minor disagreements" (Dkt. 90, 5/6/20 Order at 3), the Terrier Media Defendants agreed to add a fourth individual to the Category (vii) ESI search, to search for and produce additional wire records, and to search for multiple other non-custodial data sources requested by DISH. Accordingly, the Terrier Media Defendants made a supplemental production on May 25.

Finally, on *May 26*, DISH for the first time proposed the ESI searches listed in its Motion to Compel. (Ex. C, 5/26/20 Email.) Having already acceded to multiple of DISH's other requests for additional discovery after the May 8 modified Rule 26(f) conference and May 11 joint status report, and having spent considerable time, effort, and expense to do so, the Terrier Media Defendants declined DISH's new demands, which would impose substantial burdens on the Terrier Media Defendants during the limited time to prepare their response to DISH's

6

preliminary injunction memorandum. DISH then filed this Motion to Compel on June 2, shortly after it filed its brief in support of its preliminary injunction motion.

## ARGUMENT

**I.      The Terrier Media Defendants Complied With The Court's May 6 Order, And DISH Is Now Seeking Discovery Beyond That Order.**

    **A.      The Terrier Media Defendants Complied With Category (iii).**

The Terrier Media Defendants produced everything ordered by the Court, and more. As relevant here, Category (iii)—documents sufficient to show the sequencing of the transactions—was proposed by the Terrier Media Defendants, not DISH. That Category is, and has always been, about documents that address the way in which the transactions were contractually required to, and actually did, close on December 17, 2019. The Terrier Media Defendants produced those documents, including: the slide decks prepared by PwC and Paul Weiss showing the steps of the transactions and the order in which they occurred; the transaction documents in the closing binder, including the purchase agreements, transaction step implementation agreements, and corporate documents that set forth and effected the various steps of the transactions; and FCC filings and rulings that described and approved the sequencing of the transactions and the ownership structure that was accomplished through that sequencing. Contrary to DISH's suggestion, the Terrier Media Defendants did *not* limit their production to documents dated December 16–17, 2019, but rather conducted a reasonable investigation to identify documents addressing the sequencing of the transactions, which was contractually specified and approved by the chief regulator in this area.

Notably, DISH does not—and cannot—contend that the documents produced by the

7

Terrier Media Defendants do not adequately show the sequencing of the transactions.[1]

### B. DISH's Requests Go Beyond The Court's Order.

DISH seeks to go on a fishing expedition for pre-December 2019 communications about *why* the transactions were sequenced as they were and the negotiations over the sequencing. It apparently hopes that someone questioned whether the planned sequencing would trigger the "after-acquired" provision in the Northwest Retransmission Consent Agreement. (*See, e.g.*, Dkt. 98, Motion ¶¶ 11–14 (seeking discovery on "strategies that were obviously hatched and debated before December 2019" and speculating about what documents "may reveal"); *id.* ¶ 4 (seeking discovery on "Cox's understanding of the planned closing sequence, and its views about the true nature of the transaction and the disconnect between that sequence and that true nature").)

But this fishing expedition has no basis in Category (iii) of the May 6 order. DISH's focus on the "after-acquired" provision goes far beyond documents "sufficient to show the sequencing of the transactions." DISH's three requests do not even mention sequencing, and the first—which seeks communications over all of 2019 between any Apollo personnel and the CEOs of Northwest and Cox—is not limited by *any topic at all*. Nor does DISH attempt to tie these requests to anything it asked for in the April 24 or May 4 joint status reports, which were the basis for the May 6 order.

Furthermore, DISH ignores the indisputable facts that (a) the Terrier Media Defendants

---

[1] DISH's only suggestion that "Defendants have not produced sufficient documents to confirm the sequence that they claim was followed at closing" concerns the absence of non-privileged documents reflecting "minutes or other records of [the closing] call." (Dkt. 98, Motion ¶ 13.) Yet DISH's new requests do not target such documents. More fundamentally, that DISH hopes to find such documents does not mean they exist. As the Terrier Media Defendants have explained, the signature pages were exchanged in escrow prior to the closings, and they were released orally on the closing call, in sequence, as planned. The Terrier Media Defendants produced documents showing the exchange of signature pages in escrow (Category (ii)), as well as documents and communications from the ESI search (Category (vii)) reflecting the calendar invitation for the closing call. The Terrier Media Defendants also may submit testimony regarding the closing call, as they have previously informed DISH.

8

told DISH on May 8 that the only ESI search they were conducting was that described in Category (vii), (b) the Terrier Media Defendants confirmed this in a May 10 email, and (c) the Terrier Media Defendants and DISH submitted a joint status report on May 11 stating that they did not "have any outstanding disputes that they wish to bring to the Court at this time." (*See* Ex. A, 5/10/20 Email; Ex. B, 5/11/20 Email; Dkt. 92, 5/11/20 Joint Status Report at 2.) If DISH really believed that Category (iii) required anything like the ESI review it now seeks, it should have—and surely would have—spoken up then.

DISH's new requests also have no basis in the May 6 order's clarification of the "sufficient to show" language. (*See* Dkt. 98, Motion ¶¶ 1, 8.) The order makes clear that the Terrier Media Defendants should produce all reasonably identified documents related to each non-ESI Category, and should not limit their production for those Categories to documents dated December 16–17, 2019, or to favorable documents. (*See* Dkt. 90, 5/6/20 Order at 2; *compare* Dkt. 88, 5/4/20 Joint Status Report at 2 (DISH complaining that the "sufficient to show" language would somehow allow Defendants to "cherry-pick[]" specific documents "to support their position").) The Terrier Media Defendants complied with that directive. They did not limit their search for the non-ESI Categories to documents dated December 16–17, and did not exclude relevant documents that their investigation identified. DISH does not claim otherwise.

DISH's attempt to rewrite the Court's statement regarding the "sufficient to show" language into additional ESI searches should thus be rejected. It is contrary to well-established discovery practice and usage regarding "sufficient to show" productions. It is contrary to the plain language of the Court's order, which specified an ESI search only for Category (vii). And it is contrary to DISH's own position during the Court-ordered modified Rule 26(f) process. (*See* Ex. A, 5/10/20 Email; Ex. B, 5/11/20 Email; Dkt. 92, 5/11/20 Joint Status Report.)

9

## II. DISH Has Failed To Justify The Additional Expedited Discovery It Seeks.

DISH purports to seek this additional discovery on an expedited basis in connection with the preliminary injunction proceeding. "Expedited discovery is not the norm." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor*, 194 F.R.D. 618, 623 (N.D. Ill. 2000). A party seeking expedited discovery must establish good cause based "on the entirety of the record to date and the reasonableness of the request in light of all of the surrounding circumstances." *Id.* at 624. Courts routinely deny requests for expedited discovery, even where the party seeking discovery intends to or has moved for a preliminary injunction. *See, e.g.*, *Am. LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1066–67 (C.D. Cal. 2009) (collecting cases).

DISH's Motion does not explain why it needs this additional discovery for the preliminary injunction. This alone is fatal to its request. *See Restoration Hardware, Inc. v. Haynes Furniture Co.*, 2017 WL 3597518, at *3 (N.D. Ill. Mar. 13, 2017) (denying request for expedited discovery in advance of a preliminary injunction hearing because request went "beyond the scope of the preliminary injunction proceedings"). DISH did not need this additional discovery to prepare its opening preliminary injunction brief, which was filed shortly before the Motion to Compel was filed. And DISH does not argue that the preliminary injunction motion cannot be decided without this additional discovery. (*See* Dkt. 95, DISH PI Br.)

Moreover, DISH's own complaint illustrates why DISH does not need this discovery. DISH's new ESI requests target documents from January–December 2019 about the *negotiation* of the sequencing of the transactions, and internal *legal analysis* about whether the transactions would trigger the unambiguous "after-acquired" clause of the Northwest Retransmission Consent

10

Agreement and thereby terminate the Cox Retransmission Consent Agreement.[2] But what matters according to DISH's own pleading is what *actually happened in December 2019*:

> The crux of this dispute is Apollo's wrongful reliance upon the simultaneous acquisition of another broadcast group by Apollo affiliates to try to engineer an early termination of the Cox Retransmission Agreement. . . . [The Terrier Media Defendants' position] is incorrect both *under the terms of the relevant contracts* and *because the sequence of events* does not support the argument. The Apollo affiliates that acquired the Cox Stations did not own the Northwest stations *at the time they acquired the Cox Stations* . . . , and as a result, Defendants cannot invoke the provisions of the Northwest Retransmission Agreement to treat the Cox Retransmission Agreement as if it were terminated when the Cox Stations were acquired.

(Dkt. 84, FAC ¶ 52 (emphasis added).)[3]

DISH similarly focused on how and when the transactions actually closed in December 2019 when first seeking expedited discovery. (*See* Dkt. 81, 4/24/20 Joint Status Report at 5 (seeking documents regarding the actual structure, sequencing, and closing of the transactions); Dkt. 88, 5/4/20 Joint Status Report at 4–5 (same).) Indeed, DISH included a catch-all request that made its focus crystal clear: "Anything that supports or contradicts Defendants' contention that the Northwest station acquisition did in fact close before the Cox acquisition and the Cox stations became 'After Acquired' stations." (Dkt. 88, 5/4/20 Joint Status Report at 5.) The Court's ruling that expedited discovery should be "limited to documents and communications . . . related to the sequencing and closing of the transactions . . . on or around December 17, 2019" thus reflected DISH's own requests. (Dkt. 83, 4/29/20 Order.)

Nothing justifies DISH's changed focus. DISH points to nothing in the way the litigation has unfolded to explain why it now thinks records responsive to these new requests must be

---

[2] Of course, non-privileged documents about the sequencing of the transactions exchanged in December 2019 would have been reviewed and produced pursuant to the ESI review required by Category (vii).

[3] The Terrier Media Defendants do not agree with DISH's theory of what sequencing of the transactions was necessary to trigger the "after-acquired" provision, as they have argued elsewhere and will argue in their response to DISH's preliminary injunction brief.

11

produced on an expedited basis. Indeed, DISH does not even claim that such records will aid the Court in resolving the preliminary injunction motion. (*See* Dkt. 98, Motion.)

DISH therefore has not carried its burden in seeking expedited discovery. It received an *ex parte* TRO on January 15, and had more than three months to consider the discovery it needed for its preliminary injunction motion. It did not propose these ESI searches in either joint status report or during the May 8 modified Rule 26(f) conference. It did not actually propose them until May 26—eleven days *after* the expedited production deadline. DISH has not and cannot explain why this delay was justified, or why its new requests are necessary at this time. The requests should await merits discovery. *See*, *e.g.*, *Packman v. Chi. Tribune Co.*, 267 F.3d 628, 647 (7th Cir. 2001) ("[T]he district court did not abuse its discretion in denying [Plaintiff's] . . . eleventh-hour motion to compel discovery."); *see also In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 337 (N.D. Ill. 2005) (denying motion to compel because of movant's delay).

### III. Producing This Additional Discovery On An Expedited Basis While Preliminary Injunction Briefing Is Underway Would Be Unduly Burdensome.

Collecting, reviewing, and producing the additional ESI that DISH now seeks is not proportional to the needs of the case at this procedural juncture. As explained above, DISH does not claim it needs this discovery before the Court rules on the preliminary injunction motion. Balanced against that, responding to DISH's late-arriving and extremely broad requests now would impose unfair burdens on the Terrier Media Defendants.

The first ESI search alone—documents and communications exchanged between any Apollo personnel and either Brian Brady or Kim Guthrie for all of 2019—would result in tens of thousands of documents to review. The other two ESI searches likewise are *not* limited by custodian and would involve collecting and reviewing ESI from Apollo personnel, Brady, Guthrie, and potentially others as well, over a year-long period. In addition, documents and due

12

diligence regarding a legal question of contract interpretation have a high likelihood of being privileged, and the required privilege review would be extremely costly and time-consuming. All of this would have to be done while the Terrier Media Defendants are preparing their response to DISH's opening preliminary injunction brief. That is not a fair or reasonable allocation of burdens, particularly given DISH's delay in raising these discovery requests.

DISH's last-minute insistence on this overly burdensome discovery is even more unreasonable against the backdrop of "the entirety of the record to date and . . . all of the surrounding circumstances." *Merrill Lynch*, 194 F.R.D. at 624. DISH proposed the May 15 deadline to complete document production (Dkt. 88, 5/4/20 Joint Status Report at 6–7), and the Terrier Media Defendants agreed (*id.* at 15–16). In that same filing, the Terrier Media Defendants proposed a specific ESI search methodology in Category (vii) limited to two days (December 16–17), which would have required reviewing approximately 3,700 documents in approximately two weeks; a meaningful undertaking. (*See id.* at 9.) When the Court expanded the date range from two days to the full month of December (without adjusting any of the other search parameters), the number of documents in the presumptive review set ballooned, resulting in a figure that would have been impossible to review before the May 15 deadline. The Terrier Media Defendants and DISH then agreed to modify the search terms for the ESI review, which was reflected in the May 11 joint status report (Dkt. 92) and resulted in a total Category (vii) review set of over 10,000 documents. The Terrier Media Defendants used a team of 10 attorneys working long hours, all remotely, to collect and review those 10,000 documents, and ultimately produced 1,300 of them by the May 15 deadline.

DISH nonetheless burdened the Terrier Media Defendants with additional discovery demands. In an attempt to compromise and avoid bringing disputes to the Court, the Terrier

13

Media Defendants went above and beyond what the Court had ordered by collecting, reviewing, and producing documents from a fourth individual—Brian Brady—who was not agreed or ordered in Category (vii). The Terrier Media Defendants also produced additional wire records related to the flow of funds. And, in response to multiple inquiries from DISH, counsel for the Terrier Media Defendants conducted additional searches and consulted with their clients regarding other non-custodial data sources, including a centralized correspondence file and a document management system. After conducting this additional work, the Terrier Media Defendants made a supplemental production of 71 documents on May 25, after counsel worked through the Memorial Day holiday weekend to ensure that DISH received the supplemental production well before its opening preliminary injunction brief was due on June 1. This supplemental production was itself larger than DISH's May 15 production of 67 documents.

  The Terrier Media Defendants have expended significant time, effort, and cost to more than satisfy this Court's expedited discovery orders. The evidence produced does not support DISH's request for an injunction. So DISH has invented a new interpretation of this Court's order, in a transparent attempt to request an unjustified adverse inference that DISH does not even define. (*See* Dkt. 95, DISH PI Br. at 2.)

  There is no basis for any "adverse inference" from the Terrier Media Defendants' discovery conduct. An adverse inference is warranted only when a party intentionally destroys or refuses to produce evidence in bad faith. *Park v. City of Chicago*, 297 F.3d 606, 615 (7th Cir. 2002). Bad faith requires a showing that the party destroyed or refused to produce the evidence "for the purpose of hiding adverse information." *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 644 (7th Cir. 2008). DISH has failed to show any noncompliance with the Court's May 6 order (or federal discovery law obligations more generally), much less bad faith. As explained above,

14

the Terrier Media Defendants not only complied with this Court's orders, but went above and beyond them by producing more than was required.

It is particularly egregious that DISH asks for an adverse inference on the ground that the Terrier Media Defendants have refused to undertake this unduly burdensome ESI review when DISH first requested it eleven days *after* the Court-ordered expedited production deadline, and at a time that it would clearly distract from their ability to prepare their response to DISH's preliminary injunction brief. As it is, DISH's choice to file this Motion to Compel on June 2 has already resulted in a briefing schedule that overlaps with the Terrier Media Defendants' preliminary injunction response, which is due June 22.

DISH should not be rewarded for trying to impose pointless burdens and distract the Terrier Media Defendants and this Court from the failings of its motion for a preliminary injunction. Imposing such a significant burden on the Terrier Media Defendants by requiring them to collect and review this additional ESI at a time when they are hard at work preparing their opposition to DISH's preliminary injunction motion would be undue, particularly given DISH's failure to articulate good cause for why these ESI searches are necessary for the preliminary injunction and DISH's own delay in raising this dispute.

## **CONCLUSION**

For these reasons, this Court should deny DISH's Motion to Compel.

Dated: June 9, 2020                        Respectfully submitted,

*/s/ Hille R. Sheppard*
Scott Lassar (No. 1586270)
Bruce R. Braun (No. 6206628)
Hille R. Sheppard (No. 6226077)
John M. Skakun III (No. 6297636)
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Telephone: (312) 853-7000

15

Facsimile: (312) 853-7036
slassar@sidley.com
bbraun@sidley.com
hsheppard@sidley.com
jskakun@sidley.com

*Counsel for the Terrier Media Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 9, 2020, I caused the foregoing to be electronically filed using the CM/ECF system, which will send notice of this filing to all counsel of record.

                */s/ Hille R. Sheppard*
                Hille R. Sheppard (No. 6226077)
                SIDLEY AUSTIN LLP
                One South Dearborn
                Chicago, IL 60603
                (312) 853-7000
                hsheppard@sidley.com

                *Counsel for the Terrier Media Defendants*