IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DISH NETWORK L.L.C., <br><br> Plaintiff, <br><br> v. <br><br> COX MEDIA GROUP, LLC, APOLLO GLOBAL MANAGEMENT, INC, APOLLO INVESTMENT FUND IX, LP., TERRIER MEDIA BUYER, INC., NBI HOLDINGS, LLC, AP IX TITAN HOLDINGS GP, LLC, AP IX (PMC) VOTECO, LLC, BRYSON BROADCAST HOLDINGS, LLC, NORTHWEST BROADCASTING, L.P., NORTHWEST BROADCASTING, INC., CAMELOT MEDIA BUYER, INC., AND CAMELOT MEDIA HOLDINGS, LLC, <br><br> Defendants. | Case No. 20-cv-00570 <br><br> Hon. Thomas M. Durkin |

**DEFENDANT COX MEDIA GROUP, LLC'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendant Cox Media Group, LLC ("Cox") respectfully requests that this Court dismiss Plaintiff DISH Network, LLC's ("DISH") First Amended Complaint (Dkt. 84) pursuant to Federal Rule of Civil Procedure 12(b)(6). In support of this motion, Cox states as follows:

**INTRODUCTION**

This is a dispute between DISH and Terrier Media Buyer, Inc. ("Terrier") and its affiliates (collectively, the "Terrier Group") over rates DISH must pay Terrier to retransmit signal from 13 of Terrier's broadcast television stations. Dkt. 84, First Amended Compl. ("FAC") ¶ 52. As DISH admits, Cox does not own the stations; Cox

1

does not control whether the current owner provides consent to DISH to retransmit signal from the stations; and Cox does not control the rates charged for retransmission of the stations' signal. *Id.* ¶¶ 86, 92, 100. There is nothing Cox can do or not do that will resolve this dispute between DISH and the Terrier Group. And there is no relief from Cox that would remedy any allegedly wrongful conduct by the Terrier Group. In short, Cox does not belong in this case.

## MATERIAL FACTUAL ALLEGATIONS

On March 31, 2019, DISH contracted with Cox (the "Retransmission Agreement") to retransmit signal from 13 local television broadcast stations then owned by Cox (the "Cox Stations"). FAC ¶¶ 2, 25-30; Dkt. 7, Retransmission Agreement §§ 3(a) & 8(a). Although the Retransmission Agreement was set to expire on March 31, 2022 unless otherwise terminated early in accordance with its terms, it did not require Cox to retain ownership of the stations for the duration of the contract. *Id.* § 2. Rather, the Retransmission Agreement allowed Cox to sell the stations and assign the Retransmission Agreement to a new owner. *Id.* § 17. If Cox sold the stations, the Retransmission Agreement makes clear that Cox is "relieved of all obligations with respect to [the] Agreement arising after the assignment," and DISH must "look solely to [the new owner] for enforcement of such obligations." *Id.* § 17(a).

The Retransmission Agreement explains how it will be applied by DISH and a new owner. *Id.* § 17(b); FAC ¶ 35. For example, if a buyer has an existing retransmission agreement with DISH that requires incorporation of the stations, then the Retransmission Agreement terminates and DISH's agreement with the

buyer would govern. Retransmission Agreement § 17(b)(iii); FAC ¶ 36(a). Alternatively, if the buyer has an existing retransmission agreement with DISH that permits incorporation of the stations, DISH may choose whether to proceed under its existing agreement with the buyer or under the Retransmission Agreement. *Id.* § 17(b)(iv); FAC ¶ 36(b). And if the buyer has no existing agreement with DISH, it must assume all of Cox's obligations under the Retransmission Agreement and continue operating under that Agreement. *Id.* § 17(b)(v); FAC ¶ 36(c).

On December 17, 2019, Cox sold the stations to Terrier. *Id.* ¶ 51. The sale was no surprise to DISH—Cox and Terrier had agreed to and publicly announced the sale in February 2019, before DISH entered into the Retransmission Agreement with Cox; Cox and Terrier publicly requested FCC consent to the sale on March 4, 2019; and DISH acknowledged in the Retransmission Agreement itself that it knew Cox intended to sell the stations to "one or more entities under common control with Terrier Media Buyer, Inc." *See* Retransmission Agreement § 17(b)(ii); FAC ¶¶ 49-51.

On November 22, 2019, the FCC consented to Cox's sale of the stations to Terrier. *Id.* On December 7, 2019, Cox sent a letter to DISH confirming that it was proceeding with the sale to Terrier. *Id.* ¶ 58. The sale then closed on December 17, 2019. *Id.* ¶ 51.

Sometime after the sale closed, Terrier informed DISH that it was the new owner of the stations. FAC ¶ 63. Terrier took the position that, because it had a prior agreement with DISH that required incorporation of the stations, it had a right to terminate the Retransmission Agreement and enforce the prior agreement. *Id.* A

3

dispute arose between DISH and Terrier over which agreement governed the stations and, in January 2020, Terrier informed DISH that it would withdraw its consent for DISH to retransmit signal from the stations if DISH did not agree to a new agreement. FAC ¶¶ 63-69. DISH alleges that Terrier's conduct constitutes a breach of the Retransmission Agreement for which Cox can be held liable.

## LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. While a court must draw all reasonable inferences in the plaintiff's favor, "the tenet that a court must accept as true all of the allegations in a complaint is inapplicable to legal conclusions." *Id*. "'[N]aked assertion[s]' devoid of 'further factual enhancement'" and "formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)); *Twombly*, 550 U.S. at 555.

4

# ARGUMENT

I. **DISH fails to state a breach of contract claim against Cox (Counts III & IV).**

New York law determines whether DISH has stated a claim against Cox.[1] To state a breach of contract claim under New York law, a plaintiff must establish (1) the existence of a valid contract between the parties, (2) performance of the contract by one party, (3) breach by the other party, and (4) damages suffered as a result of the breach. *Transcience Corp. v. Big Time Toys, LLC*, 50 F. Supp. 3d 441 (S.D.N.Y. 2014). In other words, to sustain a claim against Cox, DISH must plead facts that, if proven, would establish that Cox failed to do what it agreed to do under the Retransmission Agreement (breach) and that Cox's alleged breach caused DISH an

---

[1] In diversity cases, like this one, federal courts apply the forum state's choice of law rules. *See ECHO, Inc. v. Whitson Co.*, 52 F.3d 702, 706 (7th Cir. 1995). "Illinois courts honor a contractual choice of law clause provided that (1) it does not contravene a fundamental policy of Illinois and (2) the state chosen bears a reasonable relationship to the parties or the transaction." *LaSalle Bank Nat'l Ass'n v. Paramont Props.*, 588 F. Supp. 2d 840, 849 (N.D. Ill. 2008). Further, where tort claims are "dependent upon the contract," they are subject to the contract's choice of law clause, "regardless of the breadth of the clause." *Medline Indus., Inc. v. Maersk Med. Ltd.*, 230 F. Supp. 2d 857, 862 (N.D. Ill. 2002). To determine whether a tort claim depends on a contract, courts consider whether (1) the claim alleges a wrong based on the construction and interpretation of the contract; (2) the tort claim is closely related to the parties' contractual relationship; or (3) the tort claim could not exist without the contract. *Amakua Dev., LLC v. Warner*, 411 F. Supp. 2d 941, 955 (N.D. Ill. 2006). Here, the Retransmission Agreement provides that any claims "under or relating to this Agreement, whether arising in contract, tort, under statute or otherwise" will be governed by New York law. *See* Retransmission Agreement § 18(a). Furthermore, all of DISH's claims arise out of an alleged breach of the Retransmission Agreement. Therefore, New York law applies.

identifiable harm for which this Court could grant relief (damages). *See* N.Y. Pattern Jury Instr. – Civil 4:1.

DISH has pled no facts that would entitle it to relief from Cox. As DISH readily admits, "Cox's duties with respect to the stations transferred to, and became legally binding on, [the new owner]" when Cox sold the stations to Terrier. FAC ¶¶ 86, 92, 100. DISH also freely admits its grievance is that it believes the Terrier Group wrongfully claimed that the Retransmission Agreement was terminated after it purchased the stations from Cox. FAC ¶ 52.

These admissions are not shocking since, as explained above, the Retransmission Agreement allowed Cox to sell the stations and assign the agreement to the new owner. *See* Retransmission Agreement § 17(b). The Retransmission Agreement also plainly states that, after Cox assigned the agreement to the new owner, Cox was "relieved of all obligations with respect to [the] Agreement arising after the assignment," and DISH must now "look solely to [the new owner] for enforcement of such obligations." Retransmission Agreement § 17(a).

### A. Count III does not state a claim for breach of contract.

Despite admitting that the Retransmission Agreement allowed Cox to sell the stations and assign the agreement to the new owner, DISH asserts that Cox breached its obligations under Section 3 of the Retransmission Agreement by "taking actions that deprive DISH of the ability to retransmit [the stations] for the full term of the Cox Retransmission Agreement." FAC ¶ 101. But DISH's own allegations make clear that Cox did no such thing. Indeed, DISH's claim is that the Terrier Group—not

6

Cox—claimed that the Retransmission Agreement was terminated after it purchased the stations from Cox. *Id.* ¶¶ 61-69. And even if DISH has any claim for its post-sale ability to retransmit the stations, that claim lies with the new owner—not Cox. Retransmission Agreement § 17(a).

### B. Count IV does not state a claim for breach of contract.

DISH also contends that Cox breached Section 12 of the Retransmission Agreement by misrepresenting that "no third party has or has claimed any right that would be inconsistent with the rights granted to DISH in this Agreement" and by failing to "maintain, at all times during the Term," the rights necessary to fully perform the Agreement. FAC ¶¶ 108-09. But, again, DISH alleges no facts that would support a breach of these provisions, and these claims should be dismissed.

## II. DISH fails to state a claim against Cox for breach of the duty of good faith and fair dealing (Count V).

Furthermore, New York law does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a plaintiff also pleads a breach of contract claim based on the same facts. *Transcience*, 50 F. Supp. 3d at 451-52; *see also Avazpour Networking Servs., Inc. v. Falconstor Software, Inc.*, 937 F. Supp. 2d 355, 365 (E.D.N.Y. 2013) (bad faith in connection with contract claim provides no independent basis for recovery; dismissing implied covenant claim as redundant of contract claim). Rather, a claim for breach of the implied covenant of good faith and fair dealing must allege facts different from those on which the breach of contract claim is based, including relief that is "not intrinsically tied to the damages allegedly resulting from the breach of contract." *Alaska Elec. Pension Fund v. Bank*

7

*of Am. Corp.*, 175 F. Supp. 3d 44, 63 (S.D.N.Y. 2016). Because Count V challenges the same conduct as the breach of contract claims—the sale of the stations, FAC ¶ 113—and seeks the same relief, it is duplicative and should be dismissed.

### III. **DISH fails to state a claim against Cox for specific performance (Count II).**

To state a claim for specific performance under New York law, a plaintiff must adequately plead (1) the existence of a valid contract; (2) the plaintiff has substantially performed and is willing and able to perform its remaining obligations; (3) the defendant is able to perform its obligations; and (4) the plaintiff has no adequate remedy at law. *Niagara Mohawk Power Corp. v. Graver Tank & Mfg. Co.*, 470 F. Supp. 1308, 1324 (N.D.N.Y. 1979) (citing cases). Courts will not require specific performance "if the performance sought is impossible." *Joneil Fifth Ave. Ltd. v. Ebeling & Reuss Co.* 458, F. Supp. 1197, 1200 (S.D.N.Y. 1978) (quoting Restatement of Contracts § 368).

As DISH concedes, "Cox's duties with respect to the Cox Stations transferred to, and became legally binding on, [the new owner] by virtue of the change-in-control and assignment terms of the Agreement." FAC ¶¶ 86, 92, 100. The Retransmission Agreement also clearly provides that, after the assignment, DISH must "look solely to [the new owner] for enforcement of" the agreement. Retransmission Agreement § 17(a). Thus, DISH has no right to force Cox to perform under the contract. And even if DISH did have such a right, its request would be futile, because it would be impossible for Cox, which has no control over the stations or whether the new owner

provides consent to retransmit the signal from the stations, to perform. DISH's claim for specific performance from Cox should therefore be dismissed.

## IV. DISH fails to articulate a basis for declaratory relief (Count I).

Given that DISH cannot state a justiciable contract claim against Cox, it cannot seek declaratory relief under the Retransmission Agreement. The Declaratory Judgment Act allows a court to issue a declaratory judgment only "[i]n a case of actual controversy within its jurisdiction." 28 U.S.C. § 2201(a). "The test for whether an action for declaratory relief presents an actual controversy for resolution turns on whether 'there is a substantial controversy, between parties having adverse legal interests, or sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Alcan Aluminum Ltd. v. Dep't of Rev. of State of Or.*, 724 F.2d 1294, 1298 (7th Cir. 1984).

As explained above, there is no actual controversy between DISH and Cox that would permit a declaratory judgment action. Moreover, even if the First Amended Complaint alleged an actual controversy between DISH and Cox, the relief sought in the declaratory judgment action duplicates DISH's breach of contract claim. And where, as here, "the 'substantive suit would resolve the issues raised by the declaratory judgment action, the declaratory judgment action serve[s] no useful purpose'" and should be dismissed. *Cohn v. Guaranteed Rate Inc.*, 130 F. Supp. 3d 1198, 1205 (N.D. Ill. 2015) (citation omitted); *see also Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (explaining that, because the Declaratory Judgment Act "confers a discretion on the courts rather than an absolute right upon the litigant[,] [d]istrict

9

courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites.") (internal quotations and citations omitted); *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.3d 746, 747 (7th Cir. 1987) (holding court has discretion to decline to hear a declaratory judgment action even if it considers the action justiciable); *Frazier v. U.S. Bank Nat'l Ass'n*, No. 11 C 8775, 2013 WL 1337263, at *12 (N.D. Ill. Mar. 29, 2013); *Vill. of Sugar Grove v. F.D.I.C.*, No. 10 C 3562, 2011 WL 3876935, at *9 (N.D. Ill. Sept. 1, 2011).

## V. **DISH fails to state a claim against Cox for tortious interference with contract (Count VI).**

As with its contract claims, DISH has failed to adequately plead its tort claims against Cox. New York law is clear that only a "stranger" to a contract may be held liable for tortious interference. *Koret, Inc. v. Christian Dior, S.A.*, 554 N.Y.S. 2d 867, 869 (N.Y. App. Div. 1990). "Put simply, [a defendant] cannot be held liable for inducing the breach of a contract to which it is a party." *Auto. Elec. Serv. Corp. v. Ass'n of Auto. Aftermarket Distribs.*, 747 F. Supp. 1483, 1507 (E.D.N.Y. 1990); *see also Payne v. Kathryn Beich & Nestle*, 697 F. Supp. 612, 615-16 (E.D.N.Y. 1988) ("A claim for tortious interference with contract may only be asserted against the unjustifiable interference by a third party, and not against a party to the contract.").

DISH clearly states that it is seeking to hold Cox liable as a party to the Retransmission Agreement. *See* FAC ¶¶ 118, 120 (stating that DISH's tortious interference claim is brought against Cox as a party to the Retransmission Agreement for alleged breach of its obligations under the Agreement); *see also id.*

10

¶ 117 (restating and incorporating "all of the foregoing paragraphs"). Thus, this claim fails as a matter of law. *See Auto. Elec. Serv. Corp.*, 747 F. Supp. at 1507.

## VI. <u>DISH fails to state a claim against Cox for unfair competition (Count VII).</u>

DISH's unfair competition claim fails because it has not pleaded a claim under New York law. To state a claim for relief based on unfair competition, a plaintiff "must demonstrate that the defendant wrongfully diverted the plaintiff's business to itself." *Baldeo v. Majeed*, 150 A.D.3d 942, 944 (N.Y. App. Div. 2017); *CSI Grp. LLC v. Harper*, 153 A.D.3d 1314, 1319 (N.Y. App. Div. 2017) (same). DISH makes no such allegation here, and therefore Count VII should be dismissed.

## CONCLUSION

For these reasons, Defendant Cox Media Group, LLC asks this Court to dismiss the First Amended Complaint against it, with prejudice.

Dated: June 22, 2020                    Respectfully submitted,

*/s/ Patricia Brown Holmes*
Patricia Brown Holmes
Joshua D. Lee
Brian O'Connor Watson
Allison N. Siebeneck
RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison Street, Suite 2900
Chicago, IL 60602
(312) 471-8700
pholmes@rshc-law.com
jlee@rshc-law.com
bwatson@rshc-law.com
asiebeneck@rshc-law.com

*Counsel for Cox Media Group, LLC*

## **CERTIFICATE OF SERVICE**

I certify that on June 22, 2020, these papers were filed using the Court's CM/ECF system, which will provide notice to all counsel of record.

*/s/ Patricia Brown Holmes*
Counsel for Cox Media Group, LLC
