IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DISH NETWORK L.L.C., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ) <br> COX MEDIA GROUP, LLC et al., ) <br> ) <br> Defendants. ) | Case No. 1:20-CV-00570 <br> Hon. Thomas M. Durkin |

**PLAINTIFF'S MOTION FOR A STAY PENDING APPEAL**

Plaintiff DISH Network L.L.C. respectfully moves this Court to stay enforcement of the Court's forthcoming denial of Plaintiff's motion for preliminary injunction pending appeal, or at least until a decision by the Court of Appeals for the Seventh Circuit on a stay. In support of this motion, DISH states as follows:

**INTRODUCTION**

During the status conference held on July 16, 2020, this Court indicated that it would deny DISH's Motion for a preliminary injunction (Dkt. 91). DISH intends to appeal this Court's order. In conjunction with its appeal, DISH is filing this motion asking the Court for a stay of its order to maintain the *status quo*, preventing a blackout of crucial sources of information during the national COVID-19 emergency. Specifically, DISH requests that the Court issue a stay pending appeal to permit uninterrupted retransmission of the Cox stations. Should the Court decline to issue a stay pending the duration of the appeal, then DISH respectfully requests that the Court grant a stay until DISH has a chance to raise the stay request with the Court of Appeals and the Court of Appeals acts on that request. DISH is willing to seek a stay from the Court of Appeals as soon as possible,

and no later than 7 days from a decision of this Court on this motion. But without a stay from this Court during the interim period between Monday at noon and a ruling by the Court of Appeals, a blackout is likely to ensue for the approximately one million viewers to whom DISH retransmits the Cox stations. Uninterrupted retransmission of critical news coverage and live programming to viewers is paramount during this difficult time, as recognized in public statements by Federal Communications Commission Chairman Ajit Pai, who has called for a quiet period on blackouts and cooperation among broadcasters and distributors. To that end, DISH is also negotiating with Defendants a temporary extension to permit uninterrupted retransmission during the pandemic, but such negotiations may well take time beyond the anticipated date of the Court's denial of the preliminary injunction motion. Thus, DISH believes there are proper grounds for a stay pending appeal.

## APPLICABLE STANDARD

Requests for stays pending appeal are governed by Fed. R. Civ. P. 62(d), which provides that "[w]hile an appeal is pending from an interlocutory order . . . that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." Fed. R. Civ. P. 62(d).

Courts use the following factors in determining if the stay request should be granted:

(1) the showing of likelihood of success on appeal;
(2) the likelihood of irreparable harm absent the court order;
(3) the harm to other parties from a possible court order; and
(4) the public interest.

*Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *Outboard Marine Corp. v. Thomas*, No. 85 C 3287, 1985 WL 1592, at *1 (N.D. Ill. May 24, 1985*)*; see also, Bradford-Scott Data Corp. v. Physician Computer Network, Inc.*, 128 F.3d 504, 505 (7th Cir. 1997). These factors weigh in favor of granting DISH's motion.

## ARGUMENT

### A. DISH Has a Strong Likelihood of Success on Appeal

Of course, by determining to deny DISH's request for a preliminary injunction, this Court has already expressed its view that, at this juncture of the proceedings, it believes DISH does not have a reasonable likelihood of success. The Seventh Circuit, however, has set forth a more relaxed standard for stays pending appeal, observing, "if the appeal has some though not necessarily great merit," then a showing of great harm "would justify the granting of an injunction pending appeal." *Cavel Int'l, Inc. v. Madigan*, 500 F.3d 544, 547 (7th Cir. 2007). In addition, when considering a stay pending appeal, a district court should be "mindful of the fact that, when it comes to injunctions, it should seek to 'minimize the costs of being mistaken.'" *Cmty. Pharmacies of Indiana, Inc. v. Indiana Family & Soc. Servs. Admin.*, 823 F. Supp. 2d 876, 879 (S.D. Ind. 2011*) (citing Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 12 (7th Cir. 1992)); *see also in re A & F Enterprises, Inc. II*, 742 F.3d 763, 766 (7th Cir. 2014) (stating that the purpose of a stay is "to minimize the costs of error.").

DISH meets this more relaxed likelihood-of-success standard. Defendants' position in this case hinges on their claim that the Northwest acquisition closed first. However, the documents produced by Defendants in limited discovery confirmed the opposite—that the Cox acquisition closed first, which is more than sufficient to establish a "better than negligible" chance of success on the merits. *Meridian Mut. Ins. Co. v. Meridian Ins. Grp., Inc.*, 128 F.3d 1111, 1114 (7th Cir. 1997); *see also* Dkt. 95 at 9-14. In a multi-billion-dollar transaction where documentation of the *actual* sequence of the closing steps was even more critical than usual, it was Defendants' declarants—not their documents—that offered the only purported support for Defendants' claim. Yet DISH was given no opportunity to test those declarations in discovery, or even to obtain any

3

documents beyond the handful produced for the limited period of December 2019. The Defendants themselves have submitted declarations from two persons who rely on material before December 2019. *See* Dkt. 108-2 (Declaration of Aaron Sobel), and 108-3 (Declaration of Brian Brady). Additionally, in their response to DISH's motion for a preliminary injunction, Defendants heavily relied on a DISH document from early 2019. *See* Dkt. 109 at 4-5 and Ex. DD. It would have been proper to allow DISH to obtain the additional discovery it requested. *See* Dkt. 98 at 5 (explaining that "the sequencing documents and communications are critical to DISH's motion for a preliminary injunction—specifically to the issues of the application of DISH's retransmission agreement with Cox and Defendants' intent to interfere with that agreement.").

**B.     DISH Will be Irreparably Harmed Absent a Stay**

If a stay is not granted, a blackout of the Cox stations from approximately one million viewers in ten markets will be swift and inevitable. "[H]arm is considered irreparable if it cannot be prevented or fully rectified by the final judgment after trial." *Whitaker By Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1045 (7th Cir. 2017) (internal citation omitted). As DISH has already explained, it will immediately lose subscribers who will switch to another distributor and who may never return. Dkt. 95 at 16-18. Indeed, the FCC has explained that blackouts pose harm to distributors generally and DISH specifically.[1] Money damages will not recoup DISH's lost customers or goodwill. *Id.* at 18. Intangible harms such as damage to

---

[1] *See* General Motors Corporation and Hughes Electronics Corporation, Transferors, and The News Corporation Limited, Transferee, Memorandum Opinion and Order, 19 FCC Rcd. 473, 530 ¶ 126 (2004) ("[C]omplete loss of access to certain highly popular programming networks may harm the foreclosed unaffiliated competitor in the marketplace[.]"); Competitive Impact Statement of Plaintiff United States of America, United States v. The Walt Disney Co. and Twenty-First Century Fox, Inc., Case No. 18-CV-5800, at 7 (S.D.N.Y. Aug. 7, 2018) ("[A]n MVPD's failure to reach a licensing agreement with Disney would result in the blackout of Disney's networks, including ESPN, and threaten some subscriber loss for the MVPD, including those subscribers that value ESPN's content.").

4

reputation or goodwill are presumed irreparable. *SMC Corp. v. Lockjaw, LLC*, 481 F. Supp. 2d 918, 928 (N.D. Ill. 2007).

**C.     Defendants Will Not be Harmed by a Stay**

Because of DISH's likelihood of success on the merits, there is a corresponding decrease in the harm to Defendants that the Court should consider. *See In re A & F Enters.,* 742 F.3d at 766 (applying a "sliding scale" approach, such that "the greater the moving party's likelihood of success on the merits, the less heavily the balance of harms must weigh in its favor.").

The Defendants will not be harmed by the Court issuing a stay pending an appeal, just as they have not been harmed by the TRO. DISH will continue to pay retransmission fees and will pay any additional fees due at the end of the litigation if so ordered by the Court.

**D.     The Public Interest Strongly Militates in Favor of a Stay**

Finally, the public interest would be severely damaged absent a stay. In the midst of a pandemic unprecedented in this country's history, access to information from public safety officials is crucial for the public. DISH has nearly one million subscribers in the ten markets where Cox has stations. Dkt. 95 at 16. Losing access to the local news will be devastating for those subscribers, as they will lose access to important safety information about COVID-19. At a time when local officials are constantly considering and issuing vital public health orders including quarantine or shelter-in-place ordinances, closures of restaurants, bars, and many other local businesses, and other virtually unprecedented public health measures, (*see*, Dkt 121, Fifth Amended General Order re: Covid-19 Public Emergency) it is more important than ever for subscribers to have reliable access to local news. For this reason, FCC Chairman Ajit Pai has called for a moratorium on blackouts during the emergency, encouraging distributors and

5

broadcasters to reach short-term extensions if necessary to avoid blackouts.[2]  Failing to grant a stay would expose DISH's customers to the loss of this crucial information, irreparably harming them and the broader public.

For these reasons, DISH respectfully request that the Court issue a stay pending appeal.

Dated: July 17, 2020

Respectfully submitted,

/s/ *Jared R. Butcher*
Pantelis Michalopoulos (*pro hac vice*)
Michael Dockterman (ARDC #: 3121675)
Jared R. Butcher (*pro hac vice*)
STEPTOE & JOHNSON LLP (Firm ID: 43315)
227 West Monroe, Suite 4700
Chicago, Illinois 60606
Telephone: (312) 577-1243
Fax: (312) 577-1370

- and -

1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 429-3000

*Attorneys for Plaintiff DISH Network L.L.C*

---

[2] FCC, Press Release, Chairman Pai Commends Broadcasters' Coronavirus Response And Calls For Further Action (Mar. 17, 2020), https://docs.fcc.gov/public/attachments/DOC-363102A1.pdf ("[Pai] also asked broadcasters to work with cable and satellite operators to avoid service disruptions during the next 60 days, such as by agreeing, if necessary, to short-term extensions to expiring retransmission consent agreements.").

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 17th day of July 2020, a true and accurate copy of Plaintiff DISH Network L.L.C.'s Motion for a Stay Pending Appeal was served electronically using the Court's CM/ECF system to all counsel of record and parties receiving electronic notice of pleadings filed in this case.

/s/ *Jared R. Butcher*

Jared R. Butcher