**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DISH NETWORK L.L.C., <br><br> Plaintiff, <br><br> v. <br><br> COX MEDIA GROUP, LLC, et al., <br><br> Defendants. | Case No. 1:20-cv-00570 <br><br> Hon. Thomas M. Durkin |

**THE TERRIER DEFENDANTS' OPPOSITION TO
DISH'S MOTION FOR A STAY PENDING APPEAL**

Scott Lassar (No. 1586270)
Bruce R. Braun (No. 6206628)
Hille R. Sheppard (No. 6226077)
John M. Skakun III (No. 6297636)
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036
slassar@sidley.com
bbraun@sidley.com
hsheppard@sidley.com
jskakun@sidley.com

*Counsel for the Terrier Defendants*

**INTRODUCTION**

DISH's motion for a stay pending appeal or, in the alternative, a stay "at least until a decision" by the Seventh Circuit on a forthcoming stay request (Dkt. 126, Mot. 1) is based on the wrong legal standard, and identifies no new basis – factual or legal – for reconsidering the Court's decision denying the motion for a preliminary injunction. And DISH does not come close to satisfying either threshold requirement necessary to obtain a stay: DISH has not shown a likelihood of success on the merits, much less the required "strong showing" necessary for a stay; and any supposed harm without a stay is self-inflicted and speculative, and therefore not irreparable. Moreover, DISH's claims regarding the public interest are meritless; it is not in the public interest to reward DISH for refusing to negotiate a new retransmission consent agreement ("RCA") during the six months the TRO was in place. DISH continues to seek court assistance for its refusal to negotiate in good faith. Entering a stay would only reward DISH's refusal to accept the consequences of pursuing a high-risk legal strategy with a weak probability of success. DISH has not met the high standard for a stay; its motion should be denied.

**ARGUMENT**

1.  DISH contends that the standard for showing a likelihood of success on the merits to obtain a stay pending appeal is "more relaxed" than when seeking a preliminary injunction. (Mot. 3.) And DISH says it need only "establish a 'better than negligible' chance of success on the merits." (*Id.*) DISH has the law backwards.

2.  "[I]n the context of a stay pending appeal, where the applicant's arguments have already been evaluated on the success scale, the applicant must make a *stronger threshold showing of likelihood of success to meet [its] burden.*" *In re Forty-Eight Insulations, Inc.*, 115 F.3d 1294, 1301 (7th Cir. 1997) (emphasis added); *see also, e.g.*, *Peterson v. Village of Downers Grove*, 2016 WL 427566, at *3 (N.D. Ill. Feb. 4, 2016) (requiring a "stronger threshold showing

1

of likelihood of success"); *Barker v. AD Conner*, 2011 WL 3628850, at *1 (N.D. Ill. Aug. 17, 2011) (same). To obtain a stay, DISH must actually "demonstrate a *substantial showing* of likelihood of success, *not merely the possibility of success*" as is required to obtain a preliminary injunction. *Forty-Eight Insulations, Inc.*, 115 F.3d at 1301 (emphasis added). Indeed, the Supreme Court has explained that a "critical" factor in considering a stay request is "whether the stay applicant has made a *strong showing* that [it] is likely to succeed on the merits"; "[i]t is *not enough* that the chance of success on the merits be 'better than negligible.'" *Nken v. Holder*, 556 U.S. 418, 434 (2009) (emphasis added).[1]

3. DISH has not established any likelihood of success on the merits, much less strengthened its showing since its preliminary injunction filing. DISH has "not identified a new basis – factual or legal – for the Court to reconsider its decision, or to believe that there is a 'likelihood of success,' let alone a 'strong showing' that [it] will succeed" on appeal. *Stone v. Signode Indus. Grp., LLC*, 2019 WL 2308038, at *1 (N.D. Ill. May 29, 2019) (denying motion for stay pending appeal); *see also Nken*, 556 U.S. at 434; *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). DISH simply repeats what it asserted in its failed request for a preliminary injunction, namely that "the documents produced by Defendants . . . confirmed . . . that the Cox acquisition closed first," even though it cited and still cites no probative evidence to support this contention. (*See* Mot. 3.) Accordingly, for the reasons set forth in the Terrier Defendants' preliminary injunction opposition brief (Dkt. 109, PI Opp. 6–16) and explained by this Court at the July 16

---

[1] *Cavel International, Inc. v. Madigan*, 500 F.3d 544, 547 (7th Cir. 2007) (cited at Mot. 3), applied the traditional "sliding scale" approach to the preliminary injunction factors in the context of a request for an injunction pending appeal. The court did not, as DISH claims, "set forth a more relaxed standard for stays pending appeal." (*See* Mot. 3.) And to the extent *Cavel* suggests that a stay applicant can obtain a stay with only a "better than negligible" chance of success, that did not survive *Nken*. *See* 556 U.S. at 434 (disapproving of that principle in *Sofinet v. INS*, 188 F.3d 703, 707 (7th Cir. 1999)); *see also CF Entm't, Inc. v. Nielsen Co. (US), LLC*, 2020 WL 3892988, at *7 n.2 (N.D. Ill. July 10, 2020). In any event, DISH has not shown *any* likelihood of success on the merits, so the difference in the standard does not matter.

status hearing, DISH cannot satisfy the first requirement for a stay. For this reason alone, DISH's motion should be denied.

4. DISH's complaint about discovery does not change the result. DISH does not explain how the Court's decision not to compel production of pre-December 2019 documents affected its merits arguments. (Mot. 3–4.) As the Court explained in denying the motion to compel, what matters for DISH's likelihood of success is the "*actual* sequence in which the transactions occurred." (Dkt. 104 at 1; *see also* Dkt. 102 (motion to compel opposition).) And the Terrier Defendants produced the documents relevant to that question. Those documents, consistent with Aaron Sobel's and Brian Brady's declarations (Dkts. 108-2, 108-3), make clear that the transactions closed in the sequence intended by the parties, specified in the contracts, described in the FCC filings, approved by the FCC, and expected by DISH itself. (PI Opp. 7–14.)

5. DISH will not be irreparably harmed absent a stay. DISH claims that, without a stay, "a blackout of the Cox stations . . . will be swift and inevitable." (Mot. 4.) But as the Terrier Defendants previously explained (PI Opp. 16–19), it is DISH's *choice* whether to shut off retransmission of the stations' signals to its subscribers. The Terrier Defendants cannot and will not interfere with any retransmission. (*Id.* at 18.) DISH *chooses* to impose multiple blackouts every year as part of its negotiation strategy with broadcasters. (*See* Dkt. 108-3, Brady Dec. ¶¶ 51–53; Dkt. 108-32, Ex. GG (articles describing DISH's many recent blackouts).) The decision DISH faces now is no different: it can agree to a new RCA (which the Terrier Defendants have offered) or stop retransmitting. If DISH chooses to stop retransmitting, any harm is self-inflicted and, given how frequently DISH employs blackouts as a negotiating tactic, at best speculative, and therefore does not constitute irreparable harm. (*See* PI Opp. 18–19 (citing

3

cases).) *See also Nken*, 556 U.S. at 434–35 ("simply showing some 'possibility of irreparable injury'" does not suffice to warrant a stay (citation omitted)).

6. Because DISH has not established either a likelihood of success on the merits or irreparable harm, the Court need not consider whether a stay is in the public interest or weigh any harm to DISH against the harm to the Terrier Defendants. *See Forty-Eight Insulations, Inc.*, 115 F.3d at 1300–01; *Stone*, 2019 WL 2308038, at *1.

7. In any event, a stay is *not* in the public interest. This Court should reject DISH's attempt to use the COVID-19 crisis (Mot. 1–2, 5–6) as an excuse for refusing to negotiate. DISH received an *ex parte* TRO in mid-January. DISH's stated concern about harm to its customers rings hollow given that DISH made *no effort* to negotiate a new retransmission consent agreement for the six months that the TRO remained in place. DISH knew that the TRO was *temporary*, and knew that this Court could deny the preliminary injunction motion. By refusing to negotiate, DISH knowingly accepted the risk that this day would come, and it should not be able to use its customers as a shield against the consequences of its intransigence.

8. Comments from the FCC Chairman, which DISH takes out of context, do not justify a stay. FCC Chairman Ajit Pai has encouraged broadcasters and MVPDs to work together to agree "to short-term extensions to *expiring* retransmission consent agreements." FCC, Press Release, *Chairman Pai Commends Broadcasters' Coronavirus Response and Calls for Further Action* (Mar. 17, 2020) (emphasis added) (cited at Mot. 5–6 & n.2). But the agreement governing retransmission of the Cox stations expired over six months ago. And throughout the past six months, Terrier has repeatedly offered to negotiate a new agreement. In fact, Terrier agreed *in March* to a temporary carriage agreement with DISH for the Northwest stations, has repeatedly told DISH it would be open to a temporary agreement for the Cox stations, and has in fact

4

offered such an agreement. To date, DISH has chosen not to accept that offer. DISH's self-serving claim that it intends to negotiate "a temporary extension to permit uninterrupted retransmission during the pandemic, but such negotiations may well take time beyond the anticipated date of the Court's denial of the preliminary injunction motion" (Mot. 2) should not be taken seriously in light of DISH's refusal to negotiate during the past six months while the TRO was in effect. If granted a stay, there is no reason to believe DISH will behave any differently than during the pendency of the TRO.

9. DISH is not helped by its assertion that the Terrier Defendants will not be harmed by a stay because DISH will pay "additional fees due at the end of the litigation if so ordered by the Court." (Mot. 5.) DISH already refused, at the outset of the litigation, an offer by Terrier to negotiate a new RCA with rates contingent on the outcome of the lawsuit and a retroactive true-up. (*See* Dkt. 108-3, Brady Dec. ¶ 61.) Moreover, DISH previously represented in its preliminary injunction brief that it would "pay Defendants any additional retransmission rates in any successor agreement to retroactively 'true up' Defendants in the [] event the Court finds that the Cox [RCA] does not cover the Cox stations." (Dkt. 95 at 19.) DISH *now* says that it will do this only if compelled by the Court. (Mot. 5.) DISH's shifting (and unenforceable) statements to the Court on this issue are further evidence that a stay is not warranted: the only way to resolve the parties' commercial dispute is for DISH to finally bear the financial consequences of its high-risk litigation strategy, rather than allow it to treat its weak case as a free lottery ticket. As long as a court order – be it a TRO or a preliminary injunction or a stay pending appeal or a stay pending the Seventh Circuit's ruling on a stay request – is in place, DISH has shown it will not negotiate seriously.

## CONCLUSION

For these reasons, the Court should deny DISH's request for a stay of any kind.

Dated: July 19, 2020  Respectfully submitted,

*/s/ Hille R. Sheppard*
Scott Lassar (No. 1586270)
Bruce R. Braun (No. 6206628)
Hille R. Sheppard (No. 6226077)
John M. Skakun III (No. 6297636)
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036
slassar@sidley.com
bbraun@sidley.com
hsheppard@sidley.com
jskakun@sidley.com

*Counsel for the Terrier Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 19, 2020, I caused the foregoing to be electronically filed using the CM/ECF system, which will send notice of this filing to all counsel of record.

                                         */s/ Hille R. Sheppard*
                                         Hille R. Sheppard (No. 6226077)
                                         SIDLEY AUSTIN LLP
                                         One South Dearborn
                                         Chicago, IL 60603
                                         (312) 853-7000
                                         hsheppard@sidley.com

                                         *Counsel for the Terrier Defendants*