IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DISH NETWORK L.L.C., <br><br> Plaintiff, <br><br> v. <br><br> COX MEDIA GROUP, LLC, APOLLO GLOBAL MANAGEMENT, INC, APOLLO INVESTMENT FUND IX, LP., TERRIER MEDIA BUYER, INC., NBI HOLDINGS, LLC, AP IX TITAN HOLDINGS GP, LLC, AP IX (PMC) VOTECO, LLC, BRYSON BROADCAST HOLDINGS, LLC, NORTHWEST BROADCASTING, L.P., NORTHWEST BROADCASTING, INC., CAMELOT MEDIA BUYER, INC., and CAMELOT MEDIA HOLDINGS, LLC, <br><br> Defendants. | Case No. 20-cv-00570 <br><br> Hon. Thomas M. Durkin |

**DEFENDANT COX MEDIA GROUP, LLC'S
REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

Although it buries the lede, DISH ultimately admits what is obvious from the complaint: this dispute is between DISH and Terrier—not Cox—over the rates DISH must pay Terrier to retransmit signal from 13 of Terrier's broadcast television stations, and DISH seeks from this Court a "ruling about Terrier's [not Cox's] obligations under the [Retransmission Agreement]." R. 122 at 11.

These concessions were inevitable. Try as it might, DISH cannot avoid the plain language of the Retransmission Agreement that specifically allowed Cox to sell the stations to Terrier. *See* R. 7, 109-2, Cox Retransmission Agreement § 17(b). Nor can DISH overcome that, after the sale, Cox has no responsibilities under the

1

Retransmission Agreement because its duties and obligations transferred to the new owner. R. 84 ¶¶ 86, 92, 100; R. 7, 109-2, Cox Retransmission Agreement § 17(a). Cox simply does not belong in this case, and its motion to dismiss should be granted.

## ARGUMENT

I.  **The plain language of the Retransmission Agreement, which is incorporated into the complaint, establishes that Cox did not breach its agreement with DISH.**

In its opposition, DISH accuses Cox of adopting a "selective" view of the Retransmission Agreement and suggests, for the first time, that Cox's duties and obligations under the Retransmission Agreement were not properly assigned to Terrier Media Buyer, Inc. ("Terrier"). *See* R. 122 at 4-6. But these arguments contradict the plain language of the Retransmission Agreement and DISH's own allegations in its complaint.[1]

The plain language of the Retransmission Agreement allowed Cox to sell the stations and assign its rights and obligations under the Retransmission Agreement to the new owner. R. 7, 109-2, Cox Retransmission Agreement § 17(b). DISH also admits that both Cox and NBI Holdings gave notice of the assignment to the new owner both before and after the transaction closed. R. 84 ¶¶ 58, 63. Indeed, DISH admits that Cox's assignment to the new owner was valid and that "Cox's duties with

---

[1] DISH incorporates the Retransmission Agreement into its complaint (R. 84 at 7 n.1), and a written instrument that is an exhibit to a complaint "is part of the pleading for all purposes." Fed. R. Civ. P. 10(c). And the "well-settled rule" is that "when a written instrument contradicts allegations in a complaint to which it is attached, the exhibit trumps the allegations." *N. Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 454 (7th Cir. 1998).

2

respect to the stations transferred to, and became legally binding on, [the new owner]."[2] R. 84 ¶¶ 86, 92, 100. Even giving DISH the benefit of the doubt, there is nothing in its complaint that makes a plausible claim for breach of contract against Cox.

## II. Under the express term of the Retransmission Agreement, DISH cannot compel performance from Cox.

Having conceded that Cox's duties under the Retransmission Agreement transferred to the new owner upon sale of the stations (R. 84 ¶¶ 86, 92, 100), DISH cannot seek specific performance from Cox. Again, the plain language of the contract controls, and it explicitly states that DISH's remedies, if any, lie "solely" with the new owner of the stations. *See* R. 7, 109-2, Cox Retransmission Agreement § 17(a).[3]

## III. DISH fails to state a claim for declaratory relief.

Furthermore, DISH's opposition provides no basis for its declaratory judgment action against Cox. Instead, DISH admits that it is seeking a declaratory ruling

---

[2] In its opposition, DISH represents that Cox was "acquired" (R. 122 at 1) and "purchased" (*id.* at 5) by other Defendants. That is not true. Cox sold assets (13 broadcast television stations), and Cox remains an entity separate from the other Defendants. *See* R. 84 ¶ 9, Ex. 4.

[3] DISH's new, unpled theory that it is entitled to specific performance under § 17(b)(v) of the Retransmission Agreement lacks merits. First, DISH does not allege—because it cannot—that the assignment was not valid. R. 84 ¶¶ 86, 92, 100. Second, DISH's admission that both Cox and the new owner gave it notice both before and after the closing. R. 84 ¶¶ 58, 63. Third, DISH does not—because it cannot—allege that Cox failed to secure Terrier's agreement to assume duties under the Retransmission Agreement. R. 7, 109-6, Assignment and Assumption Agreement at 1. And fourth, DISH's only remedy for such a technical deficiency would be withholding payment of retransmission fees—which it has not done because it cannot—from the new owner. *See* R. 7, 109-2, Cox Retransmission Agreement § 17(b)(v).

regarding *Terrier's*—not Cox's—obligations under the Retransmission Agreement. R. 122 at 11.

## IV. DISH's bad faith claim fails because it is nothing more than a dressed-up restatement of its breach of contract claims.

Perhaps sensing that its contract claims have no basis, DISH argues that it has a distinct claim for an alleged breach of an implied covenant of good faith. R. 122 at 11. But, as this Court has held, "DISH's implied covenant claim is based on the same factual predicate as its breach of contract claims." R. 129 at 14. And this, by itself, is fatal to DISH's bad faith claim. *See Alaska Elec. Pension Fund v. Bank of Am. Corp.*, 175 F. Supp. 3d 44, 63 (S.D.N.Y. 2016) (holding that a plaintiff cannot pursue an implied covenant claim where the relief sought is "intrinsically tied to the damages allegedly resulting from the breach of contract").

DISH's claim fails for another reason. DISH makes no plausible allegations that show how Cox supposedly acted in bad faith by selling the stations to Terrier. In fact, Cox disclosed the terms of the sale publicly *before* DISH entered into the Retransmission Agreement. *See* R. 84 ¶¶ 49-51. DISH acknowledged it had notice of the proposed sale *before* it entered into the Retransmission Agreement. *See* R. 7, 109-2, Cox Retransmission Agreement § 17(b)(ii). And *before* it entered into the Retransmission Agreement, DISH understood that sale of the stations to Terrier would "most likely" terminate the Retransmission Agreement. R. 129 at 12, 20.[4]

---

[4] The Court may take judicial notice of its prior order. *See Olson v. Bemis Co.*, 800 F.3d 296, 305 (7th Cir. 2015) (upholding district court's judicial notice of its prior order and explaining "[w]e see no reason why the court should have feigned ignorance

4

## V. DISH's allegations do not state a claim for unfair competition.

Because DISH does not plausibly allege that Cox acted in bad faith when it sold the stations to Terrier, DISH also cannot maintain its unfair competition claim against Cox. *Michele Pommier Models, Inc. v. Men Women NY Model Mgmt., Inc.*, 14 F. Supp. 2d 331, 337 (S.D.N.Y. 1998), *aff'd,* 173 F.3d 845 (2d Cir. 1999) ("[An unfair competition] claim based only on allegations that a defendant's action is 'unfair' is legally insufficient without a showing of bad faith." (quoting *Saratoga Vichy Spring Co. Inc. v. Lehman*, 625 F.2d 1037, 1044 (2d Cir. 1980)). Moreover, DISH has not alleged that Cox "wrongfully diverted [DISH's] business to itself," as required to state a claim for unfair competition under New York law. *Baldeo v. Majeed*, 150 A.D.3d 942, 944 (N.Y. App. Div. 2017); *CSI Grp. LLC v. Harper*, 153 A.D.3d 1314, 1319 (N.Y. App. Div. 2017).

## VI. DISH's own admissions establish that it does not have a viable tortious interference claim.

As with its other claims, DISH's own admissions doom its tortious interference claim. DISH's complaint states the claim is brought against Cox as a party to the Retransmission Agreement for alleged breach of its obligations under the Agreement. *See* R. 84 ¶ 118. But New York law is clear that a defendant "cannot be held liable for inducing the breach of a contract to which it is a party." *Auto. Elec. Serv. Corp. v. Ass'n of Auto. Aftermarket Distribs.*, 747 F. Supp. 1483, 1507 (E.D.N.Y. 1990).

---

of its own decision in *Olson I*"); *G.E. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997) ("it seems appropriate for the district judge to take judicial notice of a finding he previously made"; "[t]he most frequent use of judicial notice of ascertainable facts is in noticing the contents of court records").

## CONCLUSION

DISH's opposition, like its complaint, is long on rhetoric but short on material facts supporting its claims against Cox. Its conclusory allegations cannot survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). Moreover, DISH's own admissions make clear that it has no viable claim against Cox. *Massey v. Merrill Lynch & Co., Inc.*, 464 F.3d 642, 650 (7th Cir. 2006) ("[A] party may plead itself out of court by either including factual allegations that establish an impenetrable defense to its claims or by attaching exhibits that establish the same."). Thus, Defendant Cox Media Group, LLC asks this Court to dismiss the complaint against it with prejudice.

Dated: July 24, 2020            Respectfully submitted,

/s/ Patricia Brown Holmes
Patricia Brown Holmes
Joshua D. Lee
Brian O'Connor Watson
Allison N. Siebeneck
RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison Street, Suite 2900
Chicago, IL 60602
(312) 471-8700
pholmes@rshc-law.com
jlee@rshc-law.com
bwatson@rshc-law.com
asiebeneck@rshc-law.com

*Counsel for Cox Media Group, LLC*

## CERTIFICATE OF SERVICE

I certify that on July 24, 2020, these papers were filed using the Court's CM/ECF system, which will provide notice to all counsel of record.

*/s/ Brian O. Watson*
Counsel for Cox Media Group, LLC

4818-6665-3635, v. 5