UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DISH NETWORK L.L.C., | |
| Plaintiff, | No. 20 C 570 |
| v. | Judge Thomas M. Durkin |
| COX MEDIA GROUP, LLC et al., | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

This case involves a contract dispute over the rates DISH Network must pay to retransmit television stations that Defendant Terrier Media Buyer, Inc. purchased from Defendant Cox Media Group. Cox moved to dismiss DISH's claims against it. R. 105. For the following reasons, Cox's motion is granted.

**Legal Standard**

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Berger v. Nat. Collegiate Athletic Assoc.*, 843 F.3d 285, 289 (7th Cir. 2016). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018).

## Background

For a detailed factual background, the Court refers the parties to its previous orders denying DISH's motion to remand, granting in part and denying in part DISH's motion to amend its complaint, and denying DISH's motion for a preliminary injunction. *See* R. 57; R. 80; R. 129. To the extent those opinions include facts that are not alleged in the complaint or findings that draw factual inferences against DISH, the Court does not consider them here. Briefly, and as relevant to this motion, DISH entered into a three-year contract with Cox in March 2019 that permitted DISH to retransmit thirteen Cox television stations in ten major U.S. markets (the "Cox Retransmission Agreement"). R. 84 ¶¶ 26, 29. The Cox Retransmission Agreement permitted Cox to sell the stations and assign the Agreement to a new owner. *Id.* ¶ 36; R. 7 § 17(b).[1] The impact a sale has on the Agreement depends on the

---

[1] Because DISH incorporates the Cox Retransmission Agreement into its complaint and its terms are central to this dispute, the Court may consider it in ruling on Cox's

2

identity of the buyer. If the buyer has a preexisting retransmission agreement with DISH, the Cox stations become subject to that agreement, and if not, the Cox Retransmission Agreement continues to control. *Id.*[2]

On December 17, 2019, Cox sold the stations to Defendant Terrier Media Buyer, Inc. R. 84 ¶ 51. On the same day, Terrier also acquired NBI Holdings, LLC, which through its subsidiary Northwest Broadcasting, had a separate retransmission agreement with DISH (the "Northwest Retransmission Agreement"). *Id.* ¶¶ 40, 42, 62. Shortly following these acquisitions, counsel for NBI sent DISH a letter stating that NBI (as a subsidiary of Terrier) had acquired the Cox stations. *Id.* ¶ 63. Terrier took the position that because NBI had a preexisting retransmission agreement with DISH when it acquired the Cox stations, the Cox stations became subject to the higher retransmission rates in the Northwest Retransmission Agreement, which was set to expire December 31, 2019. *Id.* ¶¶ 42, 62.

At the end of December 2019, DISH requested additional information from NBI to show that Terrier had acquired NBI (and thus the Northwest stations) before the Cox stations. *Id.* ¶ 67. In early January, Terrier reiterated that the Cox stations were subject to the Northwest Retransmission Agreement, which after an agreed extension was expiring on January 15, 2020. *Id.* ¶¶ 43, 69. Terrier informed DISH that if it did

---

motion to dismiss. *See Hongbo Han v. United Cont'l Holdings, Inc.*, 762 F.3d 598, 601 n.1 (7th Cir. 2014).

[2] There is a third scenario that is not relevant here in which DISH may choose which agreement governs.

3

not agree to a new retransmission agreement, the Cox stations would "go dark" for DISH customers. *Id.* ¶ 69.

DISH's first amended complaint includes claims against Cox for declaratory judgment (Count I), specific performance of the Cox Retransmission Agreement (Count II), breach of contract (Counts III and IV), breach of duty of good faith and fair dealing (Count V), tortious interference with the Cox Retransmission Agreement (Count VI), and unfair competition (Count VII).

## Analysis

### I. Breach of Contract (Counts III and IV)

The parties agree that New York law governs DISH's claims arising from the Cox Retransmission Agreement. To state a claim for breach of contract under New York law, DISH must allege: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Doyle v. MasterCard Int'l Inc.*, 2016 WL 9649874, at *2 (S.D.N.Y. Dec. 15, 2016), *aff'd*, 700 F. App'x 22 (2d Cir. 2017).

The allegations in the amended complaint do not state a claim for breach of contract against Cox because they do not identify any way Cox breached the Cox Retransmission Agreement. In Count III, DISH alleges that Cox breached section 3 of that agreement "by taking actions that deprive DISH of the ability to retransmit [the Cox] stations for the [Agreement's] full term." R. 84 ¶ 101. But the complaint alleges that the action depriving DISH of its ability to retransmit the stations is *Apollo's* insistence (Apollo is Terrier's parent company) that it acquired NBI before

4

the Cox stations. *See Id.* ¶ 52 ("The crux of this dispute is *Apollo's* wrongful reliance upon the simultaneous acquisition of another broadcast group by *Apollo affiliates* to try to engineer an early termination of the Cox Retransmission Agreement. The mechanism on which *Apollo* relies is its concurrent acquisition of the Northwest broadcast stations.") (emphasis added); *see also id.* ¶ 3 ("Through an artful reading of the documents crafted by Apollo, Defendants seek to take advantage of two acquisitions, consummated in December 2019, in an effort to abrogate the Cox Retransmission Agreement."). And it is *Terrier* (not Cox) that maintains that the Cox Retransmission Agreement has terminated. *See id.* ¶¶ 61-69.

Importantly, the Cox Retransmission Agreement states that if it is assigned to a new owner, Cox "will be relieved of all obligations with respect to this Agreement arising after the assignment, and [DISH] shall look solely to the assignee for enforcement of such obligations." R. 7 § 17(a). Because DISH's claim concerns Terrier's position that the Cox Retransmission Agreement terminated *after* it acquired the Cox stations, DISH must look to Terrier to enforce its contractual rights.

In fact, it has done so. Nevertheless, in its response to Cox's motion, DISH argues that Cox also still has obligations under the Agreement because there has not been a valid assignment due to Cox's claim "that it was purchased by an existing broadcaster and that, therefore, termination of the Cox [Retransmission] Agreement was somehow triggered." R. 122 at 5. But as discussed above, the complaint alleges that *Terrier* (not Cox) claims that the Cox Retransmission Agreement terminated. R. 84 ¶ 62. DISH also argues that a valid assignment did not occur because Cox had a

5

duty to procure any buyer's agreement to assume and perform the Cox Retransmission Agreement's terms and conditions, which Cox failed to do since Terrier has refused to give DISH consent to retransmit the Cox stations. R. 122 at 5. This argument also falls flat. The issue is not that Terrier is refusing to assume and perform the Cox Retransmission Agreement's terms and conditions; DISH and Terrier simply disagree about which term in the Agreement applies – the one for buyers with a preexisting retransmission agreement or the one for buyers without a preexisting retransmission agreement. *See* R. 84 ¶ 3 ("Defendants make this argument *to trigger* a provision in the Cox Retransmission Agreement in an attempt to take the Cox Stations out of that agreement[.]") (emphasis added). Finally, DISH's position that there was not a valid assignment directly contradicts the allegations in its complaint. *See id.* ¶¶ 86, 92, 100 ("Cox's duties with respect to the Cox Stations transferred to, and became legally binding on, [Terrier subsidiary] Camelot by virtue of the change-in-control and assignment terms of the Cox Retransmission Agreement."). Accordingly, this argument fails and Count III is dismissed as to Cox.

In Count IV, DISH alleges that Cox also breached section 12 of the Cox Retransmission Agreement, which provides in relevant part that Cox "represents and warrants to DISH that . . . no third party has or has claimed any right that would be inconsistent with the rights granted to DISH in this Agreement." R. 7 § 12(b)(iii). DISH contends that Cox violated this provision by selling the Cox stations to Terrier before it signed the Cox Retransmission Agreement with DISH and knowing that Terrier's plan "to strip the Cox stations out of the Cox [Retransmission] Agreement"

6

was "inconsistent with the rights granted to DISH under the [Agreement]." R. 122 at 6. It is unclear whether DISH's argument is that Cox violated the warranty by 1) selling the stations before signing the Cox Retransmission Agreement; or 2) knowing about Terrier's plan. If it is the former, the Cox Retransmission Agreement expressly states that the "Parties acknowledge and agree that [Cox] has Entered Into an agreement with one or more entities under common control with Terrier Media Buyer, Inc., to transfer control of the Stations to such entity(ies)[.]" R. 7 § 17(b)(ii). DISH thus cannot now claim that Cox selling the stations was inconsistent with its rights. And if it is the latter, as discussed above, DISH alleges that Terrier's plan was "to trigger a provision in the Cox Retransmission Agreement in an attempt to take the Cox Stations out of that agreement." R. 84 ¶ 3. As such, even if Cox was aware of Terrier's plan, knowing that Terrier intended to apply a provision in the contract to which DISH agreed would not be inconsistent with DISH's rights (indeed, this entire lawsuit concerns DISH's attempt to enforce the contract in which that term appears). And for what it is worth, nor was Terrier's plan a secret that Cox kept from DISH; prior to DISH signing the Cox Retransmission Agreement, Terrier filed a public application with the FCC disclosing its plan to acquire both NBI and the Cox stations. *See* R. 108-20.[3] This makes DISH's claim even less plausible that Cox breached the agreement by concealing Terrier's intentions. Accordingly, DISH has failed to allege facts that support a breach of contract claim. Counts IV against Cox is dismissed.

---

[3] The Court can take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment. *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080-81 (7th Cir. 1997).

## II. Specific Performance (Count II)

In Count II, DISH seeks specific performance of the Cox Retransmission Agreement. A plaintiff is entitled to specific performance if "(1) there is a valid contract; (2) plaintiff has substantially performed under the contract and is willing and able to perform its remaining obligations; (3) defendant is able to perform its obligations; and (4) plaintiff has no adequate remedy at law." *La Mirada Prod. Co. v. Wassall PLC*, 823 F. Supp. 138, 140 (S.D.N.Y. 1993) (collecting cases).

The problem with DISH's claim is that according to the complaint, Cox is unable to perform its obligations, because "Cox's duties with respect to the Cox Stations transferred to, and became legally binding on, [Terrier subsidiary] Camelot by virtue of the change-in-control and assignment terms of the Cox Retransmission Agreement." R. 84 ¶¶ 86, 92, 100. Because Cox no longer controls the stations at issue, it cannot provide consent for DISH to retransmit them. Moreover, the Cox Retransmission Agreement itself provides that DISH must "look solely to the assignee for enforcement of such obligations." R. 7 § 17(a). That, of course, is Terrier. Accordingly, DISH's claim for specific performance against Cox is dismissed.

## III. Breach of Duty of Good Faith and Fair Dealing

DISH also brings a claim for breach of duty of good faith and fair dealing because "Cox has exercised its contractual rights in a way that deprives DISH of the benefit of its bargain." R. 84 ¶ 112. DISH's claim fails for two reasons. First, a "claim for breach of the covenant of good faith and fair dealing may not simply duplicate a claim for breach of the same contract; when the facts underlying the two causes of

8

action are the same, New York permits only a claim for breach of contract." *York Fuel, Inc. v. Lorillard Tobacco Co.*, 2014 WL 2865963, at *2 (E.D.N.Y. June 24, 2014). And as this Court previously held, "DISH's implied covenant claim is based on the same factual predicate as its breach of contract claims – depriving DISH of its right to retransmit the [Cox] stations." R. 129 at 14 (comparing breach of contract claim, R. 84 ¶¶ 97-104, with good faith and fair dealing claim, *id.* ¶¶ 111-116). DISH argues that its good faith and fair dealing claim is not duplicative because it "is based on the additional element of dishonest gain sought by Cox." R. 122 at 7. But the way in which Cox allegedly sought dishonest gain is based on the same underlying action – selling the stations to Terrier. This argument is thus not persuasive. *See Doyle*, 2016 WL 9649874, at *2 ("the [amended complaint's] naked assertions of bad faith, unaccompanied by any factual predicate distinct from the breach of contract claim, are insufficient to plead a plausible breach of the implied covenant of good faith and fair dealing."); *see also In re Musicland Holding Corp.*, 386 B.R. 428, 441 (S.D.N.Y. 2008), *aff'd*, 318 F. App'x 36 (2d Cir. 2009) (dismissing tortious interference claim as duplicative of breach of contract claim because it "'adds nothing by way of legal liability, and only seeks to explain the possible motives of defendants' for their alleged breach of contract.") (quoting *Miller v. Vanderlip*, 33 N.E.2d 51, 56 (N.Y. 1941)).

Moreover, the "covenant of good faith and fair dealing cannot negate express provisions of the agreement." *Transit Funding Assocs., LLC v. Capital One. Equip. Fin. Corp.*, 48 N.Y.S.3d 110, 114 (1st Dep't 2017); *see also Clalit v. Health Servs. v. Israel Humanitarian Found.*, 395 F. Supp. 2d 21, 23 (S.D.N.Y. 2005) ("[T]here can be

no breach of the implied promise or covenant of good faith and fair dealing where the contract expressly permits the actions being challenged[.]") DISH's claim is based on Cox selling the stations to Terrier. Because the Cox Retransmission Agreement permits Cox to do exactly that, DISH's good faith and fair dealing claim fails. *See* R. 7 § 17(b)(ii).

## IV. Tortious Interference with the Cox Retransmission Agreement (Count VI)

DISH's claim against Cox for tortious interference with the Cox Retransmission Agreement also fails. A defendant "cannot be held liable for inducing the breach of a contract to which it is a party." *Auto. Elec. Serv. Corp. v. Ass'n of Auto. Aftermarket Distributors*, 747 F. Supp. 1483, 1507 (E.D.N.Y. 1990); *Koret, Inc. v. Christian Dior, S.A.,* 554 N.Y.S.2d 867, 869 (1st Dep't 1990) ("It is well established that only a stranger to a contract, such as a third party, can be liable for tortious interference with a contract.").

DISH suggests in its response to Cox's motion that "it is plausible that Cox continued to engage in conduct that occurred after it transferred the Cox Stations and that constituted tortious interference with DISH's rights under the Cox [Retransmission] Agreement." R. 122 at 12-13. The problem with this argument (aside from undercutting DISH's previous argument that Cox never validly transferred the stations to begin with) is that the complaint contains no factual allegations to support this theory. To the contrary, DISH's tortious interference claim states that Cox "breached [its] obligations under the Cox Retransmission Agreement" and the Defendants' conduct "constitutes intentional procurement of these breaches."

10

R. 84 ¶¶ 120-21. This makes it clear that DISH is impermissibly attempting to hold Cox liable for inducing its own alleged breach. As such, Count VI against Cox is dismissed.

### V.     Unfair Competition (Count VII)

The "essence of an unfair competition claim is that the defendant has misappropriated the labors and expenditures of another and has done so in bad faith." *Carson Optical, Inc. v. Prym Consumer USA, Inc.*, 11 F. Supp. 3d 317, 329 (E.D.N.Y 2014) (quoting *Coca-Cola N. Am. v. Crawley Juice, Inc.*, 2011 WL 1882845, at *6 (E.D.N.Y. May 17, 2011)). But the section of the amended complaint titled "Defendants Are Acting in Bad Faith" does not mention a single action that Cox took, let alone took in bad faith (nor does DISH allege bad faith by Cox elsewhere in the amended complaint).[4] Rather, DISH alleges that "Terrier and NBI Holdings have contended that the Cox Stations were acquired by NBI Holdings" even though "the documents provided by Defendants are not consistent with [that] position." R. 84 ¶ 72. That Terrier is taking a position that DISH believes violates its rights after Cox sold Terrier the stations does not imply bad faith by Cox. Nor does DISH begin to explain how Cox "misappropriated" its rights by selling the stations, which the Cox Retransmission Agreement expressly permitted Cox to do. Accordingly, Count VII against Cox is dismissed.

---

[4] The closest DISH comes to alleging bad faith against Cox is stating that "Terrier and Cox devised a scheme to attempt to circumvent the Cox Retransmission Agreement," R. 84 ¶ 60, but DISH then fails to identify a single way Cox participated in that "scheme" other than selling the stations.

11

## VI. Declaratory Judgment (Count I)

DISH's only remaining claim against Cox is for a declaratory judgment that the Cox Retransmission Agreement remains in effect. Cox contends that there is no actual case or controversy for the Court to resolve. "The test for whether an action for declaratory relief presents an actual controversy for resolution turns on whether 'there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Alcan Aluminum Ltd. v. Dep't of Revenue of State of Or.*, 724 F.2d 1294, 1298 (7th Cir. 1984) (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). "The party seeking a declaratory judgment in federal district court bears the burden of establishing an actual controversy." *Geisha, LLC v. Tuccillo*, 525 F. Supp. 2d 1002, 1010 (N.D. Ill. 2007) (citing *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 95 (1993)).

For the reasons already stated as to DISH's other claims, there is no actual controversy between DISH and Cox. As DISH states in its response to Cox's motion, "it need[s] a declaratory ruling about *Terrier's* obligations under the Cox [Retransmission] Agreement." R. 122 at 11 (emphasis added). At bottom, DISH is attempting to hold Cox liable for selling the stations to Terrier. But the Cox Retransmission Agreement expressly permitted Cox to do so, and the Agreement makes clear that DISH must "look solely to the assignee for enforcement of such obligations." R. 7 § 17(a). Accordingly, Count I against Cox is dismissed.

## Conclusion

For the reasons stated, the Court grants Cox's motion to dismiss. R. 105. If DISH believes it can cure the deficiencies identified here, it may move for leave to file an amended complaint by October 2, 2020. If DISH chooses to do so, the motion should attach a redlined comparison between the current complaint and the proposed amended complaint, and it should be supported by a brief of no more than five pages describing how the proposed amended complaint cures the deficiencies. Otherwise, the claims against Cox will be dismissed with prejudice and the case will go forward against the remaining defendants.

ENTERED:

_____

Honorable Thomas M. Durkin
United States District Judge

Dated: September 4, 2020